Barnett v. Smart.

---

## BARNETT, Appellant, v. SMART.

### Division One, November 12, 1900.

1. **Interlocutory Decree: ANNULLED BY FINAL DECREE: TRUSTEE.    An** interlocutory decree, appointing a trustee to carry out the provisions of a deed, is annulled and swept away by a final decree that plaintiff take nothing by his bill and that defendant go hence without day.

2. **Equity Dismissal: EXTENT OF ADJUDICATION.    Where plaintiff's** bill in equity is dismissed on the ground that he has an adequate remedy at law, neither the finding of facts made by the chancellor therein nor a memorandum of what in his opinion are plaintiff's legal rights thereunder, is a binding adjudication on a court of law in a subsequent action between the same parties for the same property.

3. **Lands: SHARING IN PROCEEDS OF SALE: RECOVERY.    Parties can not,** either at law or in equity, share in the proceeds of a sale of land, and then recover the property from the vendee.    Land was conveyed to a trustee, for the sole and separate use of a widow during

her life, and after her death and the coming of age of her youngest child, to be sold by the trustee and the proceeds divided equally between her eight children. She and six children joined with the trustee in selling the land for $3,150, and $2,000 of the money was invested in city property, and afterwards this property was sold and she and all her children joined in the deed. *Held*, that the two children who did not join in the deed to the land, could not after the death of the mother recover in ejectment one-eighth interest each therein, for they had shared in the proceeds of the sale of the city property.

4. **Equity:** DISMISSAL: NO APPEAL: SUBSEQUENT EJECTMENT. Where plaintiff brings suit in equity, alleging that land was originally deeded to a trustee for the benefit of his mother and her eight children, and that the land had been sold but not according to the requirements of the deed of trust, and that the trustee is dead, and asking that the land be sold by a new trustee to be appointed by the court, and one-eighth of the proceeds turned over to him, a judgment in that case dismissing his bill on the ground that he had an adequate remedy at law, unless appealed from, is a complete bar to a subsequent recovery by him in ejectment, for the case was one for a court of equity, and although the decree may have been erroneous, it was *res adjudicata*.

Appeal from Bates Circuit Court.—*Hon. Jas. H. Lay,* Judge.

AFFIRMED.

*Chas. W. Sloan* and *J. S. Wooldridge* for appellant.

(1) The power of Woodson to sell under said deed is to be strictly construed. 4 Kent (13 Ed.), 330; 2 Washburn on Real Prop. (3 Ed.), 317; 18 Am. and Eng. Ency. of Law, 938; Pettis Co. v. Gibson, 73 Mo. 502; Wood v. Kice, 103 Mo. 336; Heidelberg v. St. Francois Co., 100 Mo. 75; Price v. Courtney, 87 Mo. 392. "A power of sale like all other powers can only be exercised in the mode and upon the exact conditions prescribed in the instrument of trust." 2 Perry on Trusts (2 Ed.), secs. 475, 783; 27 Am. and Eng. Ency. of Law, 133, and cases cited. Nor can trustee alter any of the conditions or limitations of the trust or impose

new ones, or change the nature or use of trust fund.    Clark
v. Maguire, 16 Mo. 302.    (2) Under the clear and explicit
conditions of said deed from Stephens and wife, Woodson,
trustee, could not sell the land in controversy until after the
death of Sinah Maxwell, and the sale to Isaac Smart was void,
so far as Woodson was concerned.    2 Perry on Trusts, sec.
783, *supra*; Talbott v. Hamill, 151 Mo. 292; Snook v. Mun-
day, 45 Atl. Rep. 1; Heermans v. Robertson, 3 Hun 464;
Hunt v. Townshend, 31 Md. 336; Blacklow v. Laws, 2 Hare
40; Styer v. Freas, 15 Pa. St. 339; Loomis v. McClintock, 10
Watts 274; Parker v. McMillan, 55 Mich. 265; Munday v.
Vawter, 3 Grattan 518; Booraen v. Wells, 19 N. J. Eq. 87;
Richardson v. Sharpe, 29 Barb. (N. Y.) 222; Dohoney v.
Taylor, 79 Ky. 124; Jackson v. Lignon, 3 Leigh 161; In re
Vandervoort, 1 Redf. (N. Y.) 270; Kilpatrick v. Burrow, 54
Hun 322; Downing v. Marshall, 1 Abb. App. Dec. (N. Y.)
525; Hopkins v. Quinn, 93 Ind. 223; Davis v. Howcott, 1
Dev. & B. Eq. (N. Car.) 460; Raper v. Sanders, 21 Grattan
60.    And his deed to Smart may be collaterally assailed.
See last cases cited; also Scheidt v. Crecilus, 94 Mo. 327.
(3) In construing the deed from Stephens to Woodson, effect
must be given the entire instrument so as to carry out the
intent of grantor.    Fosburgh v. Rogers, 114 Mo. 122; Long
v. Timms, 107 Mo. 512; Brown v. Gibson, 82 Mo. 529;
Gibson v. Bogy, 28 Mo. 478; Jamison v. Fopiano, 48 Mo.
194; Davis v. Hess, 103 Mo. 31; First Pres. Church v. Keller.
39 Mo. App. 441; McCullock v. Holmes, 111 Mo. 445; Wolf
v. Dyer, 95 Mo. 545; Walton v. Drumtra, 152 Mo. 489.
The grantor had a right to impose restrictions on the sale of
the land, however unimportant or unessential they might
appear.    (4) There was no power conferred on Woodson—
as shown on the face of the deed—to sell the land and rein-
vest the proceeds (and none can be implied).    The terms
of the deed amounted to a direct prohibition against a sale

in the lifetime of Sinah Maxwell. (5) Isaac Smart, when he took a deed from Woodson and Sinah Maxwell, was charged with knowledge of the extent of Woodson's powers as trustee and of every recital in deed from Stephens and wife to Woodson and purchased at his peril. 27 Am. and Eng. Ency. of Law, 264; Freeman v. Moffett, 119 Mo. 302; Patterson v. Booth, 103 Mo. 402. (6) There is no element of estoppel set up in defendant's answer in this case. There was no recital in the deed from Gaugh to Woodson and no evidence *aliunde* to make out one particle of estoppel. Fine v. St. Louis Public Schools, 30 Mo. 173; Pettis Co. v. Gibson, 73 Mo. 502; Yankee v. Thompson, 51 Mo. 234. (7) (a) The decree and finding of facts set up in the equity suit show the same issues, and as to statute of limitations and the construction of the deed in controversy, they were all determined against said Smart; and this record was conclusive, not only as to all issues involved in this case, but as to all issues which could have been raised. 1 Herman on Estoppel, sec. 411, pp. 481, 482; Laffoon v. Fretwell, 24 Mo. App. 58; Dickey v. Heim, 48 Mo. App. 114; Chouteau v. Gibson, 76 Mo. 47; Gwin v. Waggoner, 116 Mo. 151; Nave v. Adams, 107 Mo. 414; Sampson v. Mitchell, 125 Mo. 238; Moody v. Peyton, 135 Mo. 482. (b) Nor does it make any difference that the court in the decree and finding of facts dismissed plaintiff's bill on the ground that he had an adequate remedy at law. Van Fleet on Form. Adj., sec. 41; Munson v. Munson, 30 Conn. 433; Huntley v. Holt, 59 Conn. 105; Knowlton v. Warner, 25 Ill. App. 221; Almy v. Daniels, 15 R. I. 312; Painter v. Hogue, 48 Iowa 426; McReynolds v. Railroad, 34 Mo. App. 581; s. c., 110 Mo. 484.

*W. D. Summers* for respondent.

(1) Sale by trustee and re-investment of proceeds which were afterwards ratified by claimants estopped them. 2

Beach on Trusts and Trustees, sec. 672; 1 Perry on Trusts, sec. 334; 3 Kerr on Real Prop., p. 1750, sec. 1796; People v. Force, 100 Ill. 549; Price v. Blankenship, 71 Mo. App. 548; Talbott v. Hamill, 151 Mo. 393. (2) The equity suit decided nothing, was not final adjudication on merits, and is not *res adjudicata.* 2 Van Fleet on Form. Adj., p. 878, secs. 444, 448, 452; Martin v. McLean, 49 Mo. 361; State ex rel. v. Railroad, 89 Mo. 578; Garrett v. Greenwell, 92 Mo. 120; McNees v. Ins. Co., 69 Mo. App. 232; Shanklin v. Francis, 67 Mo. App. 457.

VALLIANT, J.—This is an action in ejectment for certain lands in Cass county. The dominant facts gathered from the evidence are as follows:

In 1845 the land in suit was conveyed by one Stephens to Samuel H. Woodson in trust to be possessed and enjoyed by Sinah Maxwell for her sole and separate use during her life, and after her death and the coming of age of her youngest child to be sold by the trustee, and the proceeds divided equally between her children. Upon the execution of the deed Sinah Maxwell went into possession and had the exclusive use of the land until November 16, 1865, when she and five of her children joined the trustee Woodson in a deed of general warranty, conveying the land in fee to Isaac Smart for the expressed consideration of $3,150. About the same time Smart also acquired by deed the interest of another one of Mrs. Maxwell's children. At this time Mrs. Maxwell had eight children all of whom were of age. Two of her children, John L. Maxwell and Mary Cassell, did not join in the conveyance to Smart. Immediately after his purchase Isaac Smart took possession of the land and remained in possession until October, 1895, when he sold it to his son, the defendant in this case, who has been in possession ever since. Isaac Smart died in 1896.

Shortly after the sale to Smart, that is, in December,

1865, the trustee Woodson purchased a house and lot in Kansas City, paying $2,000 therefor, and took a deed to himself as trustee for the same use and purpose as that specified in the Stephens deed, and Mrs. Maxwell moved to Kansas City and took up her abode in that house. In 1869 Mrs. Maxwell and all her children, including John L. Maxwell and Mary Cassell, joined in a deed conveying the Kansas City property to one Blake for $2,000.

In 1881 Woodson the trustee died; in 1891 Mrs. Maxwell died.

In January, 1892, John L. Maxwell brought suit in equity in the circuit court of Cass county against Isaac Smart and Mary Cassell and her husband Abraham Cassell, the general purpose of which was to have a trustee appointed in the place of Woodson, deceased, to execute the trust which it was alleged the original trustee had died leaving unexecuted. The petition in that case set out the Stephens deed in full, then the deeds above mentioned to Isaac Smart, stated the death of Woodson in 1881, and that of Mrs. Maxwell in 1891, averred that the land had not been sold according to the requirements of the trust deed, that plaintiff was then entitled to have it sold by a trustee to be appointed by the court, and one-eighth of the proceeds paid to him and one-eighth to Mary Cassell.

The answer of Isaac Smart in that case denied the allegations of the petition, set up title under his two deeds above mentioned, from Woodson trustee and Mrs. Maxwell and her children, and a plea of the statute of limitations.

The reply put in issue affirmative defenses of the answer.

By an interlocutory decree in that suit in July, 1892, by consent of parties, D. C. Barnett, the plaintiff in this suit, was appointed trustee in place of S. H. Woodson, deceased.

On March 14, 1893, a final decree was entered in that

cause, in these words: "And now at this day come again the parties plaintiff and defendants by their respective attorneys and this cause coming on regularly for trial both parties announcing ready, the same is now taken up and submitted to the court, and the court having heard the pleadings and evidence and argument of counsel and being fully advised in the premises does, for the reasons set forth in the court's finding of facts herein filed, dismiss the plaintiff's bill. It is therefore considered and adjudged by the court that the plaintiff take nothing by his said cause and that said defendants go hence without day and have and recover of and against said plaintiff their costs and charges herein laid out and expended and have execution therefor."

At the same time the court filed a memorandum of the facts found by it, which were substantially as follows; that immediately on the execution of the Stephens deed Mrs. Maxwell was put in possession of the farm and occupied it, enjoying the rents and profits, until November 16, 1865, when, all of her children, eight in number, being of age, she and the trustee Woodson and five of her children (naming them) joined in the deed above mentioned to Isaac Smart, and that on December 19, 1865, Smart by deed of that date acquired the interest of Richard Maxwell, another of her children; that the price paid by Smart was the fair value of the land and he bought in good faith believing he was getting a complete title in fee and went into immediate possession and has remained so ever since claiming title; that Woodson died in 1881, "without having executed the trust reposed in him in said deed and before the time said deed could be fully executed, except as he attempted to do so by executing the deed to Isaac Smart as above recited;" that Mrs. Maxwell died in 1891, that the land had not been sold as the Stephens deed required, that plaintiff had received no part of the proceeds, that he and Mary Cassell were each entitled to one-

eighth of the proceeds of the land when the same should be sold. Then followed the conclusions of law which the court drew from those facts, which were to the effect that, as Mrs. Maxwell was entitled to possession during her life and the land was to be sold and equally divided between her children after her death, the statute of limitations did not begin to run against plaintiff during her life, but that the plaintiff could not maintain that suit because he had "a plain and adequate remedy at law by bringing the action of ejectment for the possession of the real estate involved, through the intervention of the trustee appointed by this court." In conformity, apparently, to the suggestion of the court in that memorandum, D. C. Barnett as substituted trustee, has brought this suit. Whilst there was no direct evidence that the purchase money received by the trustee Woodson from Isaac Smart went to purchase the Kansas City property, the circumstances almost unequivocally indicate that such was the fact. The deed to Smart bears date November 16, 1865, but it is probable its actual delivery was some days later, owing possibly to the fact that all of Mrs. Maxwell's children were then of full age and had moved away; but at all events, whatsoever the cause, the deed was not filed for record until December 19th, while the deed to Woodson as trustee of the Kansas City property was acknowledged December 20th, and recorded December 25, 1865. There was evidence tending to show that this Cass county land was the only available means the trustee had and there was no evidence to the contrary. And besides the amount paid for the Kansas City property was about the amount of cash received by Woodson from Smart on that sale, the evidence showing that besides the real estate agent's commissions to be deducted from the $3,150 part of the consideration, $800 was to be a deferred payment. So that if the trial court found as a matter of fact that the proceeds of the sale to Isaac Smart went to purchase the Kan-

sas City property there is nothing to shake the foundation of that finding. The defendant in this suit is the grantor of Isaac Smart. The cause was transferred by change of venue to the Bates County Circuit Court and was there tried by the court, jury waived. There were no instructions asked or given. There was a finding and judgment for defendant; motions for new trial and in arrest by plaintiff, which were overruled and this appeal taken.

I. The plaintiff's appointment as substituted trustee was not under the *ex parte* proceeding authorized by section 8683, Revised Statutes 1889 (sec. 4580, Revised Statutes 1899), as counsel seem to think, but was by an interlocutory decree in the equity suit above mentioned, which suit as we have seen, resulted in an unconditional decree for defendants, dismissing the plaintiff's bill. That decree carried the whole case out of court and took away the foundation on which the plaintiff's interlocutory decree rested. The final decree was that plaintiff take nothing by his cause and that defendants go hence without limit. We do not mean to imply, in view of other features of the case to be presently considered, that the plaintiff would have been any better off if he had been appointed under the statutory proceeding referred to, but only to point out that the same authority that appointed the plaintiff annulled the appointment by its final decree.

II. It is insisted with great force by the learned counsel for appellant that the court's findings of facts in the equity suit are to be now taken as adjudications which the defendant is estopped to dispute, and that they conclusively establish in this suit that John L. Maxwell and Mary Cassell are entitled to an equitable interest of one-eighth each in the land to be realized through the instrumentality of the plaintiff in this suit, Barnett, as substituted trustee; the proposition being that, although the bill was dismissed, yet because

its dismissal was on the ground that the plaintiff had an adequate remedy at law, it left all the findings of fact as binding adjudications.

In support of this proposition appellant quotes from a law writer: "If a bill in equity does not show that there is an adequate remedy at law, and there is an answer in denial and a plea setting up other defenses, and a trial on the merits and a finding of facts which shows that there is an adequate remedy at law, for which reason the cause is dismissed, the finding so made is as conclusive as if the bill had been sustained. The result would have been the same if the bill had shown that there was an adequate remedy at law, and it had not been demurred to." [1 Van Fleet on Form. Adj., sec. 41.] The text writer cites some decisions sustaining that view and some to the contrary, but thinks that the better doctrine. The theory of that doctrine seems to be that unless the defendant takes the position by his answer or demurrer that the plaintiff has an adequate remedy at law, and stands on that position alone, or if by his answer he puts the facts at issue, and submits to trial of the facts by the chancellor, he is bound by the findings even though when it comes to pronouncing judgment the court should conclude that as a court of equity it is without jurisdiction and must dismiss the bill. We can not give that doctrine our approval. However well that theory may be adapted to other systems, it is not in harmony under our code system of pleading and practice, in which, although the distinctions between law and equity are preserved, they are administered by the same court, and often so unite in the same case as that separate sets of issues are framed, the one in equity to be tried by the chancellor, the other at law to be tried by a jury. In this apparent union of law and equity, jurisdiction in the same tribunal, we recognize and follow substantially the cardinal principles that distinguish the two. If the plaintiff's cause is one falling

within the jurisdiction of a court of equity, it will be tried as such with all its issues, although some of the issues involved may be such as, if standing alone, are cognizable only in a court of law.   But on the contrary, if the plaintiff's cause is an action at law it must be tried as such, although the defendant interpose an equitable defense which, as a preliminary issue, must be first tried by the court sitting in equity. Of course if the defendant's answer amounts in effect to an admission of the plaintiff's legal cause of action, but seeks to overcome it by the equitable cross suit, the whole cause is converted into a suit in equity, and triable as such.   Thus we see that whilst under some conditions a court of equity may try issues purely legal in their character and pronounce judgment thereon, yet a court of law can not try issues purely equitable in their character and pronounce a decree thereon.   But wherever either court is empowered to try the issue it is empowered also to pronounce the judgment or decree appropriate to the facts found.   To hold that a court is competent to try the issues of fact and bind the parties by its findings, but must then send them to another tribunal for an appropriate judgment would be to put the court in a strange position, and leave the party against whom the finding was in an unfortunate condition, deprived of his right of trial by jury and deprived of his right of appeal.   Because, with the facts found against him if the decree should be in his favor, he can not appeal from those findings and he must therefore go to the law court, not for trial, but to submit to the judgment already forecast.   The more reasonable and just rule is that if the court had not jurisdiction to pronounce judgment on the facts found, its findings are not adjudications of the facts.   We do not say that the court in such a case may not have had jurisdiction to try the issues of fact, because it may be that its jurisdiction to render final judgment would depend on its finding of the facts, but we do say

Vol. 158 mo—12

that when the result is that the equity court is without authority to give effect in its judgment to the facts found, and for that reason must send the parties to a law court for the adjustment of their rights, the equity court can not forestall the jurisdiction of that law court in the matter of its trial of the facts.

Fulton v. Hanlow, 20 Cal. 450, was an action in ejectment. In a former suit in equity by the city of San Francisco against the plaintiff's grantor, in which the city had sought to enjoin the execution and delivery of a sheriff's deed, on the ground that the sale was illegal and the deed if executed would cast a cloud on the complainant's title, the decree recited that the sale was valid, and that the defendant therein was entitled to receive the deed from the sheriff, but dismissed the bill on the ground that there was no equity in the complainant's cause. It seems that the deed was accordingly executed and the action of ejectment followed, predicated on that deed and it was insisted that although the equity bill had been dismissed on the ground that it was not a case for equity relief, yet the court had adjudged that the sale was valid and the deed good, and that that was a judicial determination of the title. But the Supreme Court of California held that when the equity court reached the conclusion that the cause was not one of equity cognizance, that was the end of the case. In the opinion of FIELD, C. J., it is said: "Nor does it matter whether its conclusion in this respect was correct or otherwise. When once reached, it only remained for the court to deny the injunction and dismiss the suit. It establishes the fact that the matters alleged were not sufficient for the exercise of the jurisdiction of a court of equity; it determines nothing as to the truth or falsity of those matters, or as to the rights of the parties when they are presented in a court of law."

The Supreme Court of Kansas, in Auld v. Smith, 23 Kan. 65, take the same view.

The Missouri case cited by the text writer above mentioned in support of the doctrine on which the appellant relies, illustrates what we have above said, bearing on this subject as applied to our peculiar system of a combined jurisdiction of law and equity in the same tribunal. The plaintiff in that case had sued the defendant in an action at law, to which the defendant had interposed an equitable defense calling for affirmative equitable relief against the plaintiff's suit. The court first tried the equity suit interposed by defendant, and finding against him dismissed his bill, or cross bill; then the plaintiff took a nonsuit and afterwards brought the suit again. In the second suit it was held that the finding and decree in the equity cross action was conclusive against the defendant and that matter could not be pleaded again. But there not only did the decree follow and give effect to the facts found, but it was in such shape that the defendant if he had so chosen could have appealed from the decision. [McReynolds v. Railroad, 34 Mo. App. 582.] That case does not sustain the doctrine under which it is cited.

But what the appellant is really insisting upon here is not only that the facts found by the chancellor are conclusive, but that his conclusions of law on those facts are judicial determinations of the rights of the parties. If we separate the facts in the chancellor's findings from his legal deductions we see that his facts are really undisputed. But when he says in his memorandum that Woodson died without executing the trust and before the time came when it could have been executed, and that John L. Maxwell and Mary Cassell are now each entitled to one-eighth of the proceeds of the land to be sold, he is giving not facts but his opinion of the legal effect of the deeds in evidence. If, therefore, appellant's view is correct, the case would go to the law court not only with the facts all found, but also with the rights of the parties all adjudicated, and that, too, by a court that dis-

missed the suit because it was of the opinion it did not have jurisdiction to enter any other judgment.

It is to be observed too that these legal opinions of the chancellor which the appellant deems adjudications are not even embodied in the decree but are contained only in a memorandum filed in the case in compliance with a provision of our statute requiring such memorandum for information of the appellate court in case either party excepts to the ruling. [R. S. 1889, sec. 2135.]

We hold, therefore, that if the case made by the plaintiff's petition in Maxwell v. Smart in the Cass County Circuit Court was, in the opinion of that court, not cognizable in a court of equity and was dismissed for that reason, the only *res adjudicata* in the decree was that it was not a case for equitable relief. Whether, after that, the plaintiff had a case cognizable in a court of law, the court of law would have to decide.

III. It is contended on behalf of respondent that as the period for the sale by the trustee. was by the terms of the original deed postponed until after the death of Mrs. Maxwell, that was a provision manifestly for her interest, and if waived by her the other parties in interest could not object, if the trustee sold before that event occurred. There is an interesting and learned discussion in the briefs of counsel on that point. But there is a fact in the case that puts the title conveyed by the deed of November 16, 1865, to Isaac Smart at rest regardless of the point referred to.

There could have been no doubt in the mind of the court trying the facts that the proceeds of the sale to Smart were by the trustee invested in the Kansas City property, the title to which was taken subject to the same trust, and upon which Mrs. Maxwell immediately moved and lived. This property was sold to Anna L. Blake by deed March 25, 1869, for $2,000, executed by Mrs. Maxwell and all her chil-

dren including John L. Maxwell and Mary Cassell. By this means these two persons in whose favor this suit is prosecuted participated in the proceeds of the sale by the original trustee to Smart. Their act in participating in the sale to Anna Blake was a clear ratification of the act of their trustee selling to Smart. Neither in a court of law nor of equity would they be allowed to partake of the proceeds of the sale and then recover the property from the vendee.

IV. There is another view of this case which is equally conclusive against appellant.

If the plaintiff's view of the law governing their rights under the original deed of trust and the other deeds in evidence is correct, if John L. Maxwell and Mary Cassell were at the time he filed his suit in equity, in the Cass County Circuit Court, entitled to a one-eighth interest each in the land or its proceeds, then they were entitled to the equitable relief prayed for in that suit and the decree dismissing the bill for want of equity jurisdiction was erroneous. The plaintiff in that suit had no legal title to the land, but only an interest to be worked out through the trustee and as the trustee had died (according to his theory) without executing the trust, the plaintiff was entitled in a court of equity to have a new trustee appointed and an execution of the trust under an appropriate decree. The case was in all respects one for a court of equity. But when the court dismissed the plaintiff's bill, the decree though it may have been erroneous was *res adjudicata* on the point of the plaintiff's right to relief in that case, and as the plaintiff who alone could have appealed from it did not do so, it was conclusive against him.

We perceive no error in the record, and the judgment of the Bates County Circuit Court is affirmed. All concur.