LAMRO TOWNSITE COMPANY, Respondent, v. BANK OF DALLAS, (Western Townsite Company, Intervenor,, Appellant).

(151 N. W. 282.)

(File No. 3645.   Opinion filed March 8, 1915.   Rehearing Pending.)

1. **Judgments—Action at Law—Conclusiveness of Previous Equity Findings—Evidence to Rebut, Competency—Obiter Statement.**

In an action at law to recover on checks, findings, made in a previous suit to cancel the checks and enjoin the holders from transferring or suing on same, that the contract under which the checks were given had been performed, were conclusive, where such findings were considered as the basis of a judgment of dismissal, though the Supreme Court in sustaining the trial court in dismissing the equity suit upon the merits, unnecessarily stated that no reason appeared why any party to the pending suit had not an adequate remedy at law; and it was not error, in the action at law, to exclude evidence of facts inconsistent with such findings, or to refuse to release defendant from the effect of a stipulation of facts filed in the equity suit; which stipulation had probative force in the action at law, and was conclusive between the parties thereto.

2. **Contract—Validity—Illegal Purpose—County Seat Election—Public Policy.**

That one of the purposes of a contract by one of two townsite companies to buy the other's land is to eliminate the latter's town as a competitor for the county seat and to secure influence and votes at a county seat election, does not invalidate

the contract, nor render it contrary to public policy, though the election was pending, there being no stipulation therein as to how the officers of vendor shall vote or use their influence in the election, or any provision that the purchase money shall become payable if the election is unfavorable to purchaser.

Appeal from Circuit Court, Gregory County. Hon. WILL-IAM WILLIAMSON, Judge.

Action by the Lamro Townsite Company against the Bank of Dallas, to recover upon certain checks, the Western Townsite Company intervening. From a judgment for plaintiff, and from an order denying a new trial, intervenor appeals. Affirmed.

*E. O. Patterson,* and *W. J. Hooper,* for Appellant.

*Windsor Doherty,* and *French & Orvis,* for Respondent.

(1) Under point one of the opinion, Appellant cited: 34 Cyc. 1218; Fulton & Hanlow, 20 Cal. 450; Cramer v. Moore, 36 Ohio St. 247; Barnett v. Smart, 59 S. W. 235, 237; Neafie v. Neafie, 7 Johns. Ch. 5; Van Fleet on Former Adjudiciation, Vol. 2, p. 880; Heidt v. Minor, 45 Pac. 700 (Cal.); Lewis v. Baker, (Pa.) 25 Atl. 99, 100; Small v. Lutz, 55 Pac. 529.

Respondent cited: 23 Cyc. 1227; Howard v. City of Huron, 6 S. D. 180; Murlen v. Shannon, 99 Mass. 200; Pitts v. Oliver, 13 S. D. 561; Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195; Selbie v. Graham, 18 S. D. 365; 2 Black on Judgments, Sections 500-4, 505, 609, 625; Martin v. Evans, (Md.) 36 Atl. 258, 36 L. R. A. 218; Oakes Mfg. Co. v. (N. Y.), 42 L. R. A. (N. S.) 286; Durant v. The Essex Co. (U .S.) 19 L. Ed. 154; Howard v. City of Huron, 6 S .D. 180; 23 Cyc. 1227.

(2) Under point two of the opinion, Appellant cited: Const., Art. 9, Sec. 2; 9 Cyc. 481, 499; Atkin v. Lien, 10 S. D. 436; Pingry v. Washburn, 15 Am. Dec. 676; Liness v. Hessing, 92 Am. Dec. 153; Burke v. Child, 88 U. S. 21, Wall. 441, 22 L. Ed. 623; 3 Am. & Eng. Enc. Law, 877, 878, and notes; Oscanyan v. Winchester Repeating Arms Co., 13 U. S. 261; Smith v. Applegate, 23 N. J. L. 352; Fuller v. Dane, (Mass.) 18 Pick. 472; Exch. Natl. Bank v. Henderson, 51 L. R. A. (N. S.) 549.

Respondent cited: Printing, etc., Registering Company v. Sampson, L. R. A. 19 Eq. 462, 465; 9 Cyc. 482, 483, 550; Sec. 1271, Civil Code.

WHITING, J.  In the year 1910, the Lamro Townsite Com-

pany brought an action against the Bank of Dallas to recover upon two certain checks. Thereafter the Western Townsite Company brought an action against the Lamro Townsite Company, Bank of Dallas, and certain other parties, wherein it asked a judgment that the above checks and the contract in compliance with the terms of which these two checks and a certain other check were issued be declared null and void; that the holders thereof return to plaintiff all three checks; that the Lamro Townsite Company be enjoined from prosecuting the action upon the two checks; and that all of the defendants be enjoined from negotiating the third check. This second action was submitted to the circuit court upon a stipulation of facts, the trial court entered findings, adopting, as such findings, the stipulation of facts, and upon such findings it entered judgment "that plaintiff's complaint be and the same is dismissed upon the merits." Appeal was taken to this court and such judgment affirmed, our opinion being found in Townsite Co. v. Townsite Co., 31 S. D. 47, 139 N. W. 777. An examination of said opinion will disclose the nature o the transaction out of which the two actions above mentioned arose. After the entry of judgment in the equity action, the Lamro Townsite Company brought this present action against the Bank of Dallas to recover the whole amount claimed to be due upon the three checks mentioned in the contract, which contract, is set out in full in our former opinion. The Western Townsite Company was allowed to intervene, as it appeared that it had assumed the liability of the drawer of said checks, and, the Bank of Dallas having withdrawn its answer, the Western Townsite Company became the real defendant. This action was tried before the court and a jury, a verdict was directed and returned in favor of plaintiff for the full amount of the three checks, judgment was entered upon such verdict, and from such judgment and an order denying a new trial, this appeal was taken.

Upon the trial of this cause, plaintiff offered in evidence the summons, proof of service thereof, pleadings, stipulation of facts, findings of fact, and judgment of the trial court in the equity case. Defendant sought to be relieved from the stipulation of facts entered into in the equity case, but this relief was denied. Plaintiff then offered in evidence the notice of appeal and other

papers, including the remittitur from this court, in the appeal of
the equity case.   Over the objection of defendant, all the papers
mentioned above were received in evidence.   Thereafter defend-
ant sought to introduce evidence conflicting with the facts as
stipulated and found in the equity action; this evidence was ex-
cluded, apparently upon the theory that the facts found in the
equity action were absolutely conclusive against the defendant in
this action.   This ruling of the court presents to us one of the
two questions which we think . demand consideration upon this
appeal.

[1] When and to what extent are the findings of a court in
an equity action conclusive against the parties upon a later trial of
a law action based upon the same transaction as the one involved
in the equity action?   For the purposes of this appeal it will be
assumed (but not determined) that a party to the law action
would not, in such action, be concluded by any finding of fact in
the equity action, which finding was not essential to those mat-
ters determined in such equity action.   What was in fact de-
termined by the opinion of this court upon the appeal in the
equity action?   Appellant, in its brief, repeatedly states that this
court determined that the circuit court *did not have jurisdiction,*
and that such action was dismissed for that reason.   We are un-
able to find a word in the judgment of the trial court or in the
opinion of this court that would support the contention that
either court considered the trial court to be without jurisdiction.
The trial court had jurisdiction to determine whether the plain-
tiff in that action was entitled to the equitable relief asked for, and
such trial court did exercise its jurisdiction by determining that
the plaintiff was not entitled to equitable relief; it had the juris-
diction to grant the equitable relief asked for if the facts proven
would have sustained same; but it did not have jurisdiction un-
der the pleadings before it, to grant such plaintiff any other than
equitable relief; in other words, there was not a lack of jurisdic-
tion, but rather a failure of proof.   Upon the facts found, the
trial court rightfully dismissed such action "upon the merits," .
which it could not have done if it had not had jurisdiction.

Just what was determined by this court as a basis for such
affirmance?   Under the pleadings there was presented, both in
the trial court and in this court, two questions of law:   (1)

· Was time of the essence of the contract.   (2) Were the checks negotiable instruments?   This court held that time was not of the essence of such contract; it then took up the question of whether or not there had been such a failure of performance thereof as to entitle appellant to the equitable relief demanded— the cancellation and surrender of the checks.   This made it necessary to consider the findings of the trial court in so far as such findings bore upon the question of such performance.   That this court considered such findings clearly appears from our opinion. It was only after such consideration that we held appellant not entitled to the equitable relief asked for.   Finding the equities against the appellant, this court said:

"This disposes of all the equitable features of the case, and dispenses with the necessity of deciding whether the checks are negotiable or nonnegotiable.   The appellant has shown no right to have the transfer of the checks enjoined, even though they were negotiable."

It is therefore clear that this court disposed of the appeal by sustaining the action of the circuit court in dismissing the cause "upon the merits."   Having thus disposed of the appeal, the further statement made by this court—to the effect that no reason appeared why any party to such proceeding had not a complete and adequate remedy at law—was entirely superfluous, because, in the light of what this court had already held therein, it became absolutely immaterial, for the purposes of such decision, whether or not either party had any remedy at law.

Quite a different situation would now present itself if, in the equity case, the trial court, after making its findings, had held that the plaintiff therein had an adequate remedy at law and had dismissed the complaint for that reason alone, and then this court had sustained the action of the trial court basing our decision solely upon the same ground.   Then it might, with good show of reason, be urged, as was held in Barnett v. Smart, 158 Mo. 167, 59 S. W. 235:

"To hold that a court is competent to try the issues of fact and bind the parties by its findings, but must then send them to another tribunal for an appropriate judgment would be to put the court in a strange position, and leave the party against whom the finding was in an unfortunate condition, deprived of his right of

trial by jury and deprived of his right of appeal, because, with the facts found against him if the decree should be in his favor, he cannot appeal from those findings, and he must therefore go to the law court, not for trial, but to submit to the judgment already forecast.    The more reasonable and just rule is that if the court had not jurisdiction to pronounce judgment on the facts found, its findings are not adjudications of the facts.    We do not say that the court in such a case may not have had jurisdiction to try the issues of fact, because it may be that its jurisdiction to render final judgment would depend on its finding of the facts, but we do say that when the result is that the equity court is without authority to give effect in its judgment to the facts found, and for that reason must send the parties to a law court for the adjustment of their rights, the equity court cannot forestall the jurisdiction of that law court in the matter of its trial of the facts."

See, also, Keokuk & N. W. Ry. Co. v. Donnell et al., 77 Iowa, 221, 42 N. W. 176.    But, when this court affirmed the trial court in the equity case, basing its affirmance upon the ground that the facts found established no ‘ equitable ground for relief, it was far different from remanding the parties to an action at law upon the ground that the trial court had no jurisdiction to grant equitable relief—even though equities were proven—because plaintiff had an adequate remedy at law.    The suggestion by this court, in its opinion in the equity case, that it did not appear that the parties did not have adequate remedies at law, was not only unnecessary, but was unfortunate in that it has been taken by appellant as the basis for a claim of error in this case. In this respect this case is quite similar to that of Martin v. Evans, 85 Md. 9, 36 Atl. 258, 36 L. R. A. 218, 60 Am. St. Rep. 292, wherein the court considered the effect as res judicata of a judgment of dismissal in an equity case upon the issues in a law case thereafter brought, when, in the equity case, the court, after reaching a conclusion upon the merits, incidentally observed later on in its opinion:

"I have thus * * * * gone into the merits and would dismiss the bill without regard to technical objections.    But it seems to me to be perfectly clear that this proceeding could not be sustained at any rate, as at best it would be simply a conver-

sion of the plaintiff's property  *  *  *  for which she had an ample remedy at law."

In discussing the effect of such inadvertent statement, the court said:

"These few sentences are now seized by the plaintiff and are relied on by her to show that the equity court dismissed the bill for the want of jurisdiction to entertain it; and the inquiry comes to this: Do these extracts from the opinion demonstrate, or can they be resorted to for the purpose of showing, that the bill in equity was dismissed, not because there was no decision on the merits, but because the court was without authority to pass upon the merits at all? The merits certainly were considered, discussed, and decided. The opinion, if it can be consulted to measure the scope of the final order, leaves no room to doubt this. If the merits had in reality nothing to do with the ultimate conclusion reached in the equity case, it is difficult to understand why they were considered or decided at all. And if, in fact, the bill was dismissed solely for the want of jurisdiction in the court to grant the relief asked, and not because the evidence did not justify the granting of the relief, there would have been no occasion to advert to the merits."

Appellant cites the case of Cramer v. Moore, 36 Ohio St. 347, which case is cited in Black on Judgments as supporting the proposition stated in section 518 of that work. After a careful analysis of the opinion in that case, we are convinced that the court rendering same failed to properly distinguish between the effect of a decree in equity as a bar to an action at law, and the conclusive force *as evidence,* in a suit at law, of a finding made by a court in an action in equity. An examination of the opinion in Cramer v. Moore reveals that the authorities cited, as quoted from in such opinion, merely hold that *a dismissal of a bill in equity is no bar to an action at law based upon the same cause of action.* With this proposition we have no quarrel; but this is far different from a holding that a finding of a court in any action, whether at law or equity, which said finding stands as one of the supports upon which rests the judgment of the court, is not conclusive as between the same parties when offered, not as a bar to the bringing of a later action, but, upon the trial of such later action, as evidence to prove the fact found in such

finding. The judgment in the equity case did not stand as a bar preventing the plaintiff therein from bringing an action at law or fom defending in an action brought against it; neither was it concluded by any finding of fact found by the court in the equity action, which finding did not form the basis of the final decision reached in that action; but it was concluded by every fact found which entered into the final decision reached in the equity case. To illustrate: This court, in considering the equity case upon appeal, did not consider the question of the validity of the contract; therefore neither party is concluded by any finding bearing upon the question of the validity of such contract. This court, however, did consider the question of the performance of such contract; therefore both parties are concluded by every finding relating to such question of performance. The distinction is clearly set forth in Auld v. Smith, 23 Kan. 65.

We think the correct rule is that announced in 23 Cyc. 1227:

"Findings of fact made by the court, * * * when made the basis of a judgment or decree, are conclusive on the parties in subsequent litigation."

The reasons for this are thus stated in Burlen v. Shannon, 99 Mass. 200, 96 Am. Dec. 733:

"When a fact has been once determined in the course of a judicial proceeding, and a final judgment, has been rendered in accordance therewith, it cannot be again litigated between the same parties without virtually impeaching the correctness of the former decision, which from motives of public policy the law does not permit to be done. The estoppel is not confined to the judgment, but extends to all facts involved in it as necessary steps or the ground-work upon which it must have been founded. It is allowable to reason back from a judgment to the basis on which it stands, 'upon the obvious principle that, where a conclusion is indisputable and could have been drawn only from certain premises, the premises are equally indisputable with the conclusion.' But such an inference must be inevitable, or it cannot be drawn. These we understand to be the limitations of the rule, according to all the well-considered authorities, ancient and modern."

It follows, from what we have said above, that the trial court was not in error in excluding evidence tending to prove facts inconsistent with those findings which bore upon the ques-

tion of performance of the contract. Furthermore, the trial court was not in error in refusing to relieve appellant from the effect of the stipulation of facts, as the only matters contained in such stipulation, as to which appellant sought to be relieved, were those pertaining to the question of performance of contract. While those findings of fact in the equity case, which pertained to the legality of the contract, had, for reasons hereinbefore mentioned, no probative force in the law case, yet the stipulation of facts, so far as it pertained to the legality of the contract, was conclusive between the parties thereto, appellant in his motion seeking to be relieved from such stipulation, and in the affidavits presented in support of such motion, did not claim that the stipulation was erroneous so far as it covered facts which bore upon the question of the legality of the contract.

[2] The other question presented is the legality of the contract, the covenants of which form the consideration for the checks sued on. Appellant contends that such contract was contrary to public policy and void in that it was entered into for the "purpose of influencing the selection of Winner as the county seat of Tripp county." The contract is set out in full in the opinion in Townsite Co. v. Townsite Co., supra. From the stipulation of facts it appears that the present appellant was organized for the purpose of promoting town sites in Tripp and other counties; that it had acquired a large tract of land in the center of Tripp county, and had platted thereon the town site known as Winner within 2½ miles of Lamro; that it had expended money in advertising the town site of Winner and in inducing people to move to such town site; that the Chicago & Northwestern Railway Company had agreed to extend its line of railroad to the town site of Winner; that, believing that two towns could not exist and prosper so near together, appellant had constantly endeavored to cause the people who lived at Lamro to remove to Winner; that the county seat of Tripp county had been temporarily located at Lamro; that one of the purposes of appellant in inducing the people of Lamro to remove to Winner was to secure their influence and votes for Winner as the permanent county seat of Tripp county at the election to be held in November, 1910; that partly for such purpose this appellant procured the contract before us to be entered into; that respondent and

its officers, when the contract was entered into, knew that the above was one of the purposes moving the other party to such contract; that $4,000 of the amount to be paid respondent for said land was paid to it for the purpose of inducing the removal of the citizens of Lamro to Winner, and for the purpose of inducing respondent and its officers to use their influence to secure the removal of the citizens and business of Lamro to Winner. There was neither stipulation nor other proof that respondent or its officers ever agreed to vote for Winner as the county seat of Tripp county, or ever agreed to use their influence to induce any one else to so vote, except as it might be expected that one who located at Winner, prior to the election, would from selfish motives vote for Winner. Lamro is not on a railroad. Eliminate from the above the matter of the pending candidacy of Winner for the county seat, and conceding that the sole motive of appellant was the building up of the town of Winner, no one would contend that the contract in question would be invalid; suppose there had been no county seat election pending, but both parties to the cotnract expected that at some time in the future there would be one, and appellant's purpose in entering into the contract was the same as moved it in the present case—could it be said that such contract would be invalid merely because respondent knew of such purpose. We think not. We can see no reason why these parties cannot enter into a contract to do that which would have been perfectly legitimate if there had been no election pending. Respondent did not contract that its officers would vote for Winner; neither did it contract that either it or its officers or any other person should strive to influence any person to vote for Winner; neither did it contract that these checks or any of them should only become payable if Winner was selected as the county seat; in fact it did not contract to do a thing that was not perfectly legitimate. Suppose that, instead of entering ino this contract, appellant had entered into contracts with the several residents of Lamro whereby appellant covenanted to convey to each of said parties a certain tract of land located in Winner, provided such party would locate a residence or business place thereon before a certain fixed date; suppose further that such a party should carry out his part of such contract, could appellant defend an action seeking specific performance of such

contract, upon the ground that the contract was against public policy merely because such party knew that one thing that induced appellant to make such contract was the belief that thereby such party would be led to vote for Winner for the permanent county seat? Suppose appellant had believed that the vicinity of Winner was underlaid with oil, and also believed that the completion of an oil well before the date of the election would cause a rush of people to Winner and would help its candidacy for county seat—would such belief and the desire and motive to advance the candidacy of its favorite render void, as against public policy, a contract by which appellant contracted with some well company that, in consideration of such company's completing a well prior to such election date, it would pay such company twice its regular price for sinking such a well? We think not. Appellant has cited numerous authorities, but an examination discloses none wherein the situation was in principle like that in the present case.

The judgment and order appealed from are affirmed.