John J. BOSWELL and Thomas J. O'Neil, Statutory Trustees of Hazelgreen Trading Company, Plaintiffs–Appellants,

v.

The AMERICAN INSURANCE COMPANY, West American Insurance Company, Michael P. McClanahan, Bobbie McClanahan and Farmer–Foster Insurance Agency, Inc., Defendants–Respondents.

No. 17440.

Missouri Court of Appeals,
Southern District,
Division Two.

June 22, 1992.

Motion for Rehearing or to Transfer Denied July 13, 1992.

Application to Transfer Denied Sept. 22, 1992.

David F. Sullivan, Schmidt, Kirby & Sullivan, Springfield, for plaintiffs-appellants.

Michael J. Patton, C. Bradley Tuck, Turner, Reid, Duncan, Loomer & Patton, Springfield, for defendant-respondent Farmer–Foster.

David W. Hall, Jr., Bussell, O'Neal & Hall, Springfield, for defendant-respondent American Ins. Co.

FLANIGAN, Chief Judge.

Plaintiffs in this action are John J. Boswell and Thomas J. O'Neil, statutory trustees[1] of Hazelgreen Trading Company, a former Missouri corporation ("Hazelgreen"). Defendants are The American Insurance Company ("American"), West American Insurance Company ("West American"), Michael P. McClanahan and Bobbie McClanahan, and Farmer–Foster Insurance Agency, Inc., ("Farmer–Foster").

The second amended petition contained four counts. In Count I, plaintiffs sought reformation of a fire insurance policy issued by American ("the policy"). Count I was directed against American and the McClanahans and, initially, Farmer–Foster. The trial court sustained Farmer–Foster's motion for summary judgment on Count I. On January 10, 1990, the trial court (Judge John E. Parrish), after holding a separate trial on Count I, made findings of fact and conclusions of law, held that plaintiffs were not entitled to reformation of the policy, and denied plaintiffs relief on Count I.

Count II was directed against defendant West American. A settlement was reached by plaintiffs and West American, and plaintiffs dismissed Count II with prejudice.

Count III was directed against American and sought recovery under the policy. On February 8, 1991, on the tenth day of a jury trial on Count III, the trial court (Judge Mary Dickerson) entered an order sustaining American's motion to dismiss Count III.

Count IV of the petition was directed against Farmer–Foster and alleged that Farmer–Foster knew or should have known that Hazelgreen was to be named loss payee under the policy, that Farmer–Foster neglected to make sure that the policy was issued in proper form so as to protect Hazelgreen as a loss payee, that "said failure to make sure the policy was issued in proper form was negligent," and that Hazelgreen was damaged by reason of the negligence. On July 11, 1990, the trial court (Judge Mary Dickerson) sustained Farmer–Foster's motion for summary judgment with respect to Count IV and entered judgment on Count IV in favor of Farmer–Foster.

Plaintiffs appeal and challenge only the rulings of the trial court with respect to Count III and Count IV. Although plaintiffs have not challenged that portion of the judgment which disposed of Count I,

---

1. Except where otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

With respect to the forfeiture of corporate rights and privileges, § 351.525 provided, in pertinent part:

[T]he directors and officers in office when the forfeiture occurs shall be the trustees of the corporation, who shall have full authority to wind up its business and affairs, sell and liquidate its property and assets, pay its debts and obligations and to distribute the net assets among the shareholders; and the trustees as such shall have power to sue for and recover the debts and property due the corporation, describing it by its corporate name, and may be sued as such.

Section 351.525 was repealed in 1990 (L.1990, S.C.S.H.B. 1432.) A similar section, with the same number, was reenacted in 1990 (L.1990, S.C.S.H.B. 960). In 1991, § 351.525 was again repealed (L.1991, S.C.S.H.B. 219.) There was no similar reenactment. See §§ 351.486.3 and 351.476.2(5) and (6). None of the parties to this appeal mentions the repeal of § 351.525 or any of the foregoing statutes, and no party claims that the repeal invalidates this appeal.

the content and disposition of Count I affect plaintiffs' contentions on appeal with respect to Count III and Count IV. The three counts will be discussed separately.

## COUNT I

Count I pleaded, in addition to its formal portions concerning such matters as venue and land descriptions, the allegations set forth in the following eight paragraphs.

Plaintiffs are the last named officers and directors of Hazelgreen, a former Missouri corporation, whose corporate charter was forfeited on November 1, 1983. Pursuant to § 351.525, plaintiffs are the statutory trustees of Hazelgreen and are authorized to bring this action. Hazelgreen owned land and improvements in Laclede County. On June 1, 1981, Hazelgreen, as lessor, and the McClanahans, as lessees, entered into a lease agreement for the premises and improvements, and possession was transferred to the McClanahans. In connection with the lease, Hazelgreen also sold to the McClanahans all inventory "previously owned by [Hazelgreen], d/b/a Factory Store." Hazelgreen financed the sale of the inventory and took a note from the McClanahans in the principal amount of $34,000. The note was secured by an agreement in which the McClanahans conveyed a security interest in the inventory to Hazelgreen.

From and after June 1, 1981, the McClanahans owned and operated the business known as Cedar Hill Trading Post, using the inventory and the land. Neither Hazelgreen nor any of its trustees at any time was involved, either directly or indirectly, as an owner or operator of the business known as Cedar Hill Trading Post. Under the agreements between Hazelgreen and the McClanahans, the McClanahans were obligated to purchase and maintain fire and extended coverage insurance to protect the interest of Hazelgreen as to the land, improvements and inventory.

On December 1, 1983, in consideration of a premium, American, through Farmer-Foster, issued a policy of insurance which extended fire loss coverage on the building and contents. A copy of the policy is attached and marked Exhibit A and incorporated.

The General Declarations listed the named insured as follows:

"Named Insured and Mailing Address
MIKE McCLANAHAN & JOHN BOSWELL, ATIMA
DBA CEDAR HILL TRADING POST
RT. 2, BOX 404
RICHLAND MO 65556
The named Insured is a(n) PARTNERSHIP
Business or Operations of the Named Insured: GIFT SHOP."

On February 18, 1984, the building and contents were totally destroyed by fire. The policy was continuously in force from date of issuance to date of loss. By reason of the fire, Hazelgreen has been damaged in the sum of $57,822 for the loss of the building and improvements and as a secured party has been damaged in the sum of $30,291.47, plus interest to date of $5,704.90 on the indebtedness secured by the contents.

The policy was incorrectly and mistakenly issued in the following respects: Mike McClanahan and John Boswell were shown as the named insureds, d/b/a Cedar Hill Trading Post, when, in fact, John Boswell had no ownership interest in the business known as Cedar Hill Trading Post. Hazelgreen was not shown as a loss payee.

The mistakes were mutual. All parties involved in connection with the issuance of the policy intended to insure Mike McClanahan and Bobbie McClanahan, d/b/a Cedar Hill Trading Post, as the named insured, and protect the interest of Hazelgreen as a loss payee as owner of the real estate and as a secured party of the inventory. The policy did not accomplish the objective intended by the parties and therefore should be reformed by the court so as to accomplish the intended objective of the parties. The plaintiffs have no adequate remedy at law.

American has refused to pay plaintiffs the sums set forth above, or any part thereof, despite demand. American's refusal to pay the loss sustained by Hazel-

green is vexatious, without reasonable cause or excuse, and in violation of the policy. Hazelgreen is entitled to damages for vexatious delay, and reasonable attorney's fees, pursuant to §§ 375.296 and 375.-420.

The prayer of Count I was that the court reform the policy "so as to show the named insured to be Mike McClanahan and Bobbie McClanahan, d/b/a Cedar Hill Trading Post, and to show Hazelgreen as the loss payee, under the terms of the policy." Plaintiffs also prayed for judgment, after reformation, from American in the sum of $108,710.81, plus interest, vexatious penalties, and reasonable attorney's fees.

On January 10, 1990, after a separate trial had been held on Count I, Judge Parrish entered an order denying plaintiffs reformation and other relief requested by Count I. Among the findings of fact contained in that ruling were the following:

On June 1, 1983, West American issued a policy which designated Mike McClanahan, d/b/a Cedar Hill Trading Post, as the named insured and Hazelgreen as mortgagee. In November 1983, defendant Mike McClanahan contacted Bob Garner, an independent insurance agent, about obtaining other insurance coverage. Garner contacted Ed Rowe of Farmer–Foster. Farmer–Foster was a general agent for American. Mike McClanahan dealt only with Bob Garner and did not deal directly with Farmer–Foster or any employee of Farmer–Foster. Garner dealt with Ed Rowe, an employee of Farmer–Foster.

At the request of Garner, Ed Rowe, on behalf of Farmer–Foster, gave a premium quotation to Garner for a policy of insurance which would be available from American. Garner provided Mike McClanahan with the information he had received from Ed Rowe with respect to the premium quotation for the requested insurance coverage. McClanahan advised Bob Garner that McClanahan would first have to check with John Boswell about the possibility of obtaining different insurance coverage. Thereafter, McClanahan advised Garner that McClanahan wished to obtain the insurance coverage from American.

McClanahan told Garner that John Boswell and McClanahan should be the named insureds. Garner thereafter contacted Ed Rowe of Farmer–Foster and told Rowe that John Boswell and Mike McClanahan were to be the named insureds on the American policy.

On November 30, 1983, Ed Rowe, on behalf of Farmer–Foster, issued a policy binder naming as insureds John Boswell and Mike McClanahan in accordance with the request that had been received from Bob Garner. American issued its policy, effective December 1, 1983, which designated its insureds as Mike McClanahan and John Boswell.

The conclusions of law contained in the ruling included the following:

The policy of insurance issued by American was in accordance with the request communicated by Mike McClanahan and Bob Garner to Farmer–Foster. The policy of insurance, as issued, embodied the terms for insurance coverage that were negotiated between Bob Garner and Farmer–Foster. "However, Farmer–Foster had been provided with incorrect information about the ownership of the business premises." Plaintiffs are not entitled to reformation.

As stated earlier, plaintiffs do not challenge the portion of the judgment which disposed of Count I.

## COUNT III

In the discussion of Count I, this court set forth eight paragraphs which contained the allegations of Count I. Count III incorporated the allegations contained in the first five of those paragraphs.

Count III then alleged the following matters:

The declaration sheet of the American policy designates the following as named insureds: "Mike McClanahan and John Boswell, ATIMA, DBA Cedar Hill Trading Post." The term "ATIMA" serves to provide insurance coverage, under the terms of the policy, to Mike McClanahan and John Boswell "as their interests may appear." John Boswell's interest is as a statutory trustee of Hazelgreen.

Under the policy, American became obligated to pay Hazelgreen, or its statutory trustee or trustees, for any loss within 60 days after receiving plaintiffs' proof of loss—to-wit, on April 12, 1984—but American has refused and still refuses to pay plaintiffs. American's denial, dated August 23, 1984, is attached and incorporated and marked Exhibit C. American's refusal to pay the loss as sustained by Hazelgreen is vexatious, and Hazelgreen is entitled to penalties and attorney's fees under § 375.-296 and § 375.420.

The prayer of Count III was for a judgment against American in the amount of $108,710.81, plus interest, vexatious penalties, and reasonable attorney's fees.

The trial court entered an order sustaining American's motion to dismiss Count III. The dismissal was "on the ground that plaintiffs John J. Boswell and Thomas J. O'Neil, as statutory employees of Hazelgreen, are not insureds under the policy of insurance with American and therefore are not entitled to any recovery on the claim as set forth in Count III."

Plaintiffs' first point is that the trial court's ruling with respect to Count III was erroneous because: (a) the policy was ambiguous in that it listed "Mike McClanahan and John Boswell, ATIMA (as their interests may appear), d/b/a Cedar Hill Trading Post," as the named insured, and plaintiffs should have the opportunity to introduce parol evidence as to the intent of the parties to establish whose interests were to be protected by the policy; (b) Judge Parrish had previously ruled that the policy need not be reformed, thereby allowing plaintiffs to proceed at law on the policy as issued; and (c) American is estopped to deny coverage on this ground because it denied coverage on the ground that respondent McClanahan had committed fraud and other dishonest acts which, when imputed to plaintiffs, precluded recovery.

■ In this court, American raises the significance of the ruling on Count I, and so does prong (b) of plaintiffs' first point. For the reasons which follow, this court holds that plaintiffs' failure to appeal from the ruling on Count I makes that ruling

final and res judicata between plaintiffs and American, that the ruling on Count I precludes plaintiffs from relitigating the cause of action in Count III which is the same cause of action stated in Count I, and that plaintiffs' first point has no merit.

Generally, in order to have estoppel by a former judgment (res adjudicata), there must be: (1) Identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made. The phrase "quality of the person" apparently refers to the status in which he sues or is sued. With regard to element (4), later opinions of the court of appeals have used this wording: "(4) identity of the status in which the persons sue or are sued."

*Barkley v. Carter County State Bank*, 791 S.W.2d 906, 910 (Mo.App.1990) (citing authorities).

Examination of Count I, the ruling on Count I, and the content of Count III shows that all four elements are present. With regard to element 1, see *Barkley v. Carter County State Bank, supra,* at 910, n. 4. As will be shown, the cause of action is identical. The parties to both counts are identical, and the same is true of the status of the respective parties.

A former adjudication on the same cause of action between the same parties is conclusive in subsequent proceedings as to every issue of fact which was or might have been litigated in the first proceeding.... Furthermore, a former judgment is not only conclusive as to matters in issue and embraced within the issue, but as to all matters which the parties could have alleged to sustain their action or defense.

*Id.* at 910–911.

"Litigants are to be held bound to set out all reasons which they deem to exist for any relief they may consider themselves entitled to; they ought not to be permitted to take two or three bites to an equitable cherry any more than at a law cherry." *St. Bethel Missionary Baptist Church v. St. Louis Builders, Inc.,* 388 S.W.2d 776,

780 (Mo.1965). This situation is one where a litigant ought not to be permitted to take a bite at a law cherry after he has bitten the same equitable cherry.

In *Grue v. Hensley*, 357 Mo. 592, 210 S.W.2d 7, 10[1,2] (1948), our supreme court said:

> The tests for determining whether a cause of action is single and cannot be split, have been said to be: (1) whether separate actions brought thereon arise out of the same "act, contract or transaction"; (2) or, whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions. Our decisions have pretty generally employed the first of these tests, and use one or more of the words "act"; "contract" or "transaction." And our Civil Code, itself, now and in the past, has used the word "transaction" as stating the basis of a cause of action, or claim, or counterclaim.

> But the phrase "cause of action" and the word "transaction" both have broad meanings. The former does not refer to the *form* of action in which the claim is asserted, but to the *cause for* action, i.e., the underlying facts combined with the law giving the party a *right* to a remedy of one form or another based thereon. And the latter word ("transaction") has an even broader meaning. It has been defined as including the aggregate of all the circumstances which constitute the foundation for a claim, counterclaim, etc. (Emphasis in original.)

■ Count I sought the equitable relief of reformation (plus damages), and Count III sought the legal relief of damages. Reformation is equitable in nature and cannot be granted by a jury. *Sunset Acres Motel, Inc., v. Jacobs*, 336 S.W.2d 473, 484[20] (Mo.1960). To similar effect see *Sloss v. Farmers Mutual Auto Ins. Co.*, 350 S.W.2d 446, 451[1] (Mo.App.1961); *Teich v. Globe Indem. Co.*, 25 S.W.2d 554, 557[5] (Mo.App.1930).

There is bewhiskered authority for the proposition that an unsuccessful attempt to obtain reformation of a contract does not preclude a subsequent action for recovery of damages for breach of the contract as actually written. *Henderson Tire & Rubber Co. v. Gregory*, 16 F.2d 589, 594[4] (8th Cir.1926). See also 49 A.L.R. 1513 (Attempt to reform contract as election of remedies precluding action to enforce contract as written or vice versa). That authority is inconsistent with the trend of modern cases based on principles of res judicata.

> In those jurisdictions where a litigant can present all the bases for a claim, whether legal or equitable, inconsistent, alternative or hypothetical, in a single action, failure to invoke all "inconsistent remedies" in an initial suit which goes to final judgment on the merits should preclude their assertion in subsequent litigation between the parties and their privies—not because of election of remedies, but because a final judgment on the merits is res judicata as to all matters pertaining to a single cause of action which might have been litigated.

Moore's Federal Practice, Vol. 1B, § 0.405[7].

The cause of action in Count I is the same cause of action set forth in Count III.

> Separate legal theories are not to be considered as separate claims, even if "the several legal theories depend on different shadings of the fact, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." Restatement of Judgment 2d § 24 comment c.

*Siesta Manor, Inc. v. Community Federal*, 716 S.W.2d 835, 839[12] (Mo.App.1986).

> The merger of law and equity into a single civil action provides the most dramatic demonstration of the impact of procedural reform on claim preclusion. Merger makes it possible to join in a single action requests for relief that previously could not be brought together at all, or that could have been brought together only by sacrificing significant procedural rights. Claim preclusion requires what merger has made possible. Demands for equitable and legal remedies on a single claim or cause of action

must be advanced in the first action or lost. Several federal cases reflect the broad proposition that a suit for injunctive relief precludes a second suit on the same cause of action for damages. Wright, Miller & Cooper, Fed.Prac. and Proc.: Jurisdiction § 4410.

When a prior judgment satisfies the elements of res judicata, "[I]t is immaterial whether the judgment was at law or in equity." *Shay v. New York Life Ins. Co.*, 354 Mo. 920, 192 S.W.2d 421, 427 (1946). 50 C.J.S. Judgments § 609, p. 32. A decree in equity was res judicata in a subsequent action at law in the following cases: *Shay v. New York Life Ins. Co.*, 354 Mo. 920, 192 S.W.2d 421 (1946); *Barnett v. Smart*, 158 Mo. 167, 59 S.W. 235 (1900); and *Smith v. Francis*, 216 Mo. App. 293, 264 S.W. 77 (1924).

*Barkley v. Carter County State Bank, supra*, 791 S.W.2d at 912.

■ It is immaterial, for res judicata purposes, that Count I, which sought reformation, required a higher degree of proof than Count III would have required. The burden on a party seeking reformation of a contract is to present clear and convincing evidence that the contract does not express the agreement of the parties by reason of their mutual mistake. *Duenke v. Brummett*, 801 S.W.2d 759, 765[1] (Mo.App. 1991). The burden of proof on Count III, an action at law, was preponderance of the evidence. Although issue preclusion, or collateral estoppel, may be affected by the difference in the burden of proof, Restatement (Second) of Judgments § 28(4) at 273 (1982), that principle "does not translate to the realm of claim preclusion." *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 594 (3d Cir. 1989). See Wright, Miller & Cooper, Fed. Prac. and Proc.: Jurisdiction § 4422.

In situations involving collateral estoppel, Missouri courts hold that a litigant, by allowing judgment on the merits on one claim in a multi-claim lawsuit to become final, is precluded from disputing the findings of that judgment in his appeal on the other claims. *Arnold v. Fletcher*, 761 S.W.2d 261, 262[2] (Mo.App.1988); *Franksen v. George*, 725 S.W.2d 878, 880 (Mo.

App.1987); *Sunshine Realty Corp. v. Killian*, 702 S.W.2d 95, 99–100 (Mo.App.1985); *Sherwood Estates Homes Ass'n v. Schmidt*, 592 S.W.2d 244, 246[1] (Mo.App. 1979). See also *Stover v. Patrick*, 459 S.W.2d 393, 397 (Mo. banc 1970). The judgment on Count I is now final. If it had been rendered in a prior action it is clear that under res judicata it would preclude the bringing of Count III in a second action. There is no reason not to accord the judgment on Count I the same treatment under the circumstances here.

■ The trial court ruled properly in dismissing Count III. Where, as here, the ruling of the trial court is correct, it is immaterial whether the trial court assigned a correct or incorrect reason for its ruling. *Edgar v. Fitzpatrick*, 377 S.W.2d 314, 318[12] (Mo. banc 1964); *Farm Bureau Mut. Ins. Co. v. Broadie*, 558 S.W.2d 751, 753[1] (Mo.App.1977).

Although it is unnecessary to consider the prongs of plaintiffs' first point, the fact is that the matters set forth in prong (a) were actively litigated in the trial of Count I, and plaintiffs introduced evidence specifically directed to them. Prong (b) misstates the record. Judge Parrish did not rule that the policy "need not be reformed." He ruled that plaintiffs were not entitled to reformation. Prong (c) could have been litigated in the trial of Count I. Further, the denial referred to in prong (c) was not addressed to plaintiffs. Moreover, "[n]either waiver nor estoppel may create a new contract for the parties. While an insurer may be estopped by its conduct from declaring a forfeiture of a policy, the coverage cannot be extended by the doctrine of waiver or estoppel." *Lawrence v. New York Life Ins. Co.*, 649 S.W.2d 461, 465[5] (Mo.App.1983). Plaintiffs' first point has no merit.

Plaintiffs' second point is that in ruling on Count III, Judge Dickerson erred in finding as a matter of law that one provision of the American policy was neither ambiguous nor repugnant to another provision. In view of this court's rejection of plaintiffs' first point, their second point is moot and requires no discussion.

The judgment with respect to Count III is affirmed.

## COUNT IV

Count IV incorporated all of the allegations of Count I. Count IV then alleged the following matters:

Prior to the issuance of the American policy, Farmer–Foster knew or should have known that Hazelgreen was to be named as a loss payee in the American policy. Farmer–Foster failed to make sure that the policy was issued in proper form so as to protect Hazelgreen as a loss payee as the owner of the real property and as a secured party to the inventory. Said failure was negligent. As a direct and proximate result of the negligence, Hazelgreen was damaged in that American denied coverage and continues to deny coverage. By reason of said denial, plaintiffs have been damaged in the sum of $108,710.81 plus interest.

The prayer of Count IV was for damages in the sum of $108,710.81, together with interest.

Farmer–Foster does not argue that Count IV fails to state a claim for relief, even though it is procedurally permissible to present such an argument initially on appeal, Rule 55.27(g)(2).

Farmer–Foster filed a motion for summary judgment with respect to Count I and Count IV. The ground of that motion, with respect to Count I, was that Farmer–Foster was not a party to the American policy for which plaintiffs sought reformation, "therefore, Farmer–Foster is not a necessary party to [Count I]." On July 12, 1989, prior to the trial on Count I, Farmer–Foster's motion with respect to Count I was sustained. At the request of the parties, Farmer–Foster's motion for summary judgment as to Count IV was "passed."

A motion for summary judgment "shall state with particularity the grounds therefor." Rule 74.04(c). Farmer–Foster's motion for summary judgment with respect to Count IV stated:

[Farmer–Foster] is entitled to summary judgment on Count IV of plaintiffs' second amended petition because *it acquired insurance coverage for plaintiffs* pursuant to the instructions of defendant Mike McClanahan, plaintiffs' tenant, and said policy was in full force and effect at the time of the fire, and said policy provided all available coverages which this defendant had been required to acquire on behalf of defendant Mike P. McClanahan and Bobbie McClanahan, *and plaintiffs*. (Emphasis added.)

Plaintiffs' sole point with respect to Count IV reads: "The trial court erred in sustaining [Farmer–Foster's] motion for summary judgment on Count IV against plaintiffs because there were genuine issues as to material facts including whether Farmer–Foster knew or should have known that [Hazelgreen] was to be named as an insured, in some capacity, under the terms and conditions of [the American policy]."

Summary judgment is an extreme, drastic remedy and may be employed only where there are no genuine issues of fact and where the moving party is entitled to judgment as a matter of law.... On review, the appellate court examines the record in the light most favorable to the party against whom a summary judgment was rendered.... The burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of fact. A genuine issue of fact exists when there is the slightest doubt about a fact.

*Austin v. Trotters Corp.*, 815 S.W.2d 951, 953 (Mo.App.1991) (citing authorities).

On July 11, 1990, which was after the judgment on Count I had been entered, the trial court sustained Farmer–Foster's motion for summary judgment on Count IV. The motion had not been amended. Because the motion was filed prior to the trial on Count I, it did not, when filed, refer to the findings on Count I because those findings had not yet been made. In view of the identity of the plaintiffs, the motion is inaccurate in stating that Farmer–Foster "acquired insurance coverage for plaintiffs." The motion fails to take into account the

matters discussed in the following six paragraphs.

At the trial on Count I, Mike McClanahan and Ed Rowe testified in person, and the deposition of Bob Garner was introduced into evidence. All three men testified concerning the declaration sheet on the West American policy. West American had the fire insurance coverage on the premises prior to the issuance of the American policy.

McClanahan identified the declaration sheet of the West American policy as Exhibit 11 and testified that he gave that exhibit to Garner because he wanted to make sure American would provide "the same or similar coverage." McClanahan said he told Garner "that's the way it has to be." Exhibit 11 shows McClanahan as the named insured and Hazelgreen as mortgagee.

Bob Garner testified that McClanahan provided him with a copy of the declaration sheet of the West American policy, "which was all we needed to get a bid on it," and that he transmitted it to Farmer–Foster and never got it back. Garner also testified that McClanahan told Garner that he wanted the insurance in the same basic form as the declaration sheet he presented. Garner said, "I figured that when I sent the declaration sheet up it was all the information Farmer–Foster needed on it.... My primary concern was getting a copy of the current declaration sheet and getting it to Farmer–Foster because that was their obligation." He also stated that he sent the declaration sheet with a handwritten letter of transmittal to Ed Rowe.

The letter of transmittal from Garner to Rowe, which bears a stamp "Received November 26, 1983," reads: "Ed, I need your help on this one. He wants a quote back on this before 12–1–83 when his next quarterly premium comes due. He's ready to switch. I just have to give him a rate. Bob."

Rowe testified that he received the letter of November 26, 1983, from Garner and that attached to it was the "cover sheet to the insured's prior policy." Rowe said he did not remember what company it was

with but it did explain what coverages were then in effect, and it had information "regarding who the named insured was" and whether or not there were any loss payees or mortgagees listed. Rowe also said that he reviewed "the declaration sheet that came with the letter." He said the declaration sheet was received by him before the application for the American policy was filled out.

The foregoing testimony is evidence that the declaration sheet of the West American policy had been delivered to Rowe before the application for the American policy was filled out.

There is at least one reason why Farmer–Foster is not entitled to claim that the ruling on Count I is res judicata on Count IV. That reason is that Farmer–Foster was not a party to Count I because it had earlier obtained a ruling to the effect that it was not a party to Count I.

█ In the trial court, after the ruling on Count I, Farmer–Foster filed additional suggestions in support of its motion for summary judgment on Count IV and in effect conceded that Rowe had received the declaration sheet. In those suggestions, Farmer–Foster said:

In summary, Ed Rowe, on behalf of Farmer–Foster Insurance Agency, could do one of two things: First, he could blindly write a policy based upon the declaration sheet issued by a prior insurance company, or second, he could issue a policy based upon the specific instructions of plaintiffs' tenant, Mike McClanahan. By following the instructions of Mike McClanahan, the named insured, plaintiffs now contend that such acts by Ed Rowe constitute unjustifiable fault or neglect on the part of [Farmer–Foster]. Contrary to plaintiffs' position, this court has already found ... that [Farmer–Foster] was provided with incorrect information, solely through the acts of plaintiffs' tenant, Mike McClanahan.

Because this defendant did provide insurance coverage *which properly protected the interests of plaintiffs,* pursuant to the terms, provisions and exclu-

sions of the insurance policy, and because [Farmer–Foster] did act reasonably, and without any fault or neglect on their part in the procurement of the insurance policy, summary judgment should be entered in favor of defendant, [Farmer–Foster], concerning claims asserted by plaintiffs in Count IV. (Emphasis added.)

In order to avail itself of the benefit of the findings and ruling on Count I, Farmer–Foster seeks to invoke the doctrine of collateral estoppel.

In *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 719 (Mo. banc 1979), the court listed three factors and a possible fourth factor which a court should consider in determining whether to apply the doctrine of collateral estoppel. The first three factors are: (1) whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. The court also said: "Most courts have added a fourth factor ...: whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit."

The "fourth factor," according to recent Missouri decisions, is now a required factor. *Snyder v. Snyder,* 788 S.W.2d 339, 340[2] (Mo.App.1990); *Vinson v. Vinson,* 725 S.W.2d 121, 124 (Mo.App.1987). For the reasons which follow, this court holds that the ruling on Count I does not meet the requirements of factors (1) and (4).

Farmer–Foster's appellate brief, referring to the ruling on Count I, states:

The trial court has held, in its conclusions of law and findings of fact, that the named insured, Mike McClanahan, gave incorrect information about ownership of the property in question. Further, the trial court held that Farmer–Foster obtained the policy from American based upon that incorrect information. It is clear from the trial court's ruling that Farmer–Foster designated *the named insureds and loss payees* as specifically instructed by McClanahan. An insurance agent who procures insurance as requested by a named insured does not commit negligence. *Kap-pel Fabrics, Inc. v. R.B. Jones and Sons, Inc.,* 402 S.W.2d 49 (Mo.App.1966). See also *Hall v. Charlton,* 447 S.W.2d 5 (Mo.App.1969). Given the trial court's rulings, appellants cannot relitigate the issue of negligence in subsequent trial by jury. (Emphasis added.)

Count IV is based on alleged negligence of Farmer–Foster. No such allegation was made in Count I. Farmer–Foster does not argue that the receipt by Rowe of Exhibit 11, showing Hazelgreen as a mortgagee under the West American policy, would not be a material fact on the issue of Farmer–Foster's negligence. The ruling on Count I made no reference to Exhibit 11 or whether Rowe had received it. Although the findings on Count I include references to the named insureds, there is no reference to loss payees or mortgagees.

Although the ruling on Count I states that Farmer–Foster had been provided with incorrect information about the ownership of the business premises, it does not state what that incorrect information was. Further, it does not find that Farmer–Foster, through Rowe, did not receive Exhibit 11 which does contain correct information, at least so far as it states that Hazelgreen was a mortgagee. Hazelgreen was a mortgagee with respect to the inventory which was covered under the American policy and the West American policy. Viewed in its entirety, the ruling on Count I refers to the manner in which the named insureds were to be listed, as distinguished from mortgagees or loss payees. For these reasons, factor (1) of collateral estoppel is lacking.

With regard to factor (4), it is material that, as mentioned in the discussion of Count III, plaintiffs' burden of proof with respect to Count I was greater than it is with respect to Count IV.

Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue

in a subsequent action between the parties is not precluded in the following circumstances:

.    .    .    .    .

(4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; ...

Restatement (Second) of Judgments § 28.

Similarly, in Wright, Miller & Cooper, Fed.Prac. and Proc.: Jurisdiction § 4422 it is said: "Failure to carry a special burden of persuasion characterized as requiring clear and convincing evidence or some like showing does not preclude a later attempt to prove the same issue by a preponderance of the evidence." See also *Shaffer v. Terrydale Management Corp.*, 648 S.W.2d 595, 608–609 (Mo.App.1983).

Farmer–Foster had previously succeeded in disassociating itself from Count I. As a matter of fundamental fairness, this court holds that factor (4) of collateral estoppel is lacking. This court expresses no opinion on whether plaintiffs are or may be entitled to relief on Count IV. The trial court erred in granting Farmer–Foster's motion for summary judgment on Count IV.

That portion of the judgment in favor of defendant Farmer–Foster Insurance Agency, Inc., and against plaintiffs on Count IV of plaintiffs' second amended petition is hereby reversed and the cause remanded for further proceedings not inconsistent with this opinion. All other portions of the judgment are affirmed.

MAUS and MONTGOMERY, JJ., concur.