Arch SMITH, Appellant,

v.

John Q. HAMMONS and John Q. Hammons Entertainment Company, Inc., Respondent.

No. SD 23472–2.

Missouri Court of Appeals, Southern District.

Jan. 3, 2002.

Robert Layton Desselle, Independence, for Appellant.

Charles Britwood Cowherd, Springfield, for Respondent.

Before: EDWIN H. SMITH, P.J., ALMON H. MAUS, S.J., and GEORGE M. FLANIGAN, S.J.

ALMON H. MAUS, Senior Judge.

By his petition in this action in Count I, Plaintiff Arch Smith sought to recover against Defendants John Q. Hammons and John Q. Hammons Entertainment, Inc., upon a verbal contract for Plaintiff to produce and perform in a magic show. By Count II, the Plaintiff sought to recover in quantum meruit for providing valuable expertise in the entertainment business and other valuable services to Defendants. The trial court granted Defendants' motion for summary judgment upon Count I. After a jury verdict upon Count II for the Defendants, the trial court entered final judgment against Plaintiff. Plaintiff appeals, asserting the trial court erred in entering the summary judgment upon Count I.

The judgment on Count II against the Plaintiff stands unassailed. He has had his day in court upon his allegations in quantum meruit and the evidence to support them. By this appeal, he asserts his right to recover under Count I upon his allegations of express contract, which were incorporated by reference in Count II. This sequence could raise an issue of whether or not that assertion of express contract is barred by the adverse judgment on Count II. However, the Defendants have not raised that issue and its resolution is not necessary for the determination of this appeal. This opinion should not be construed as authority upon that issue. Those interested may start their research with cases such as *Boswell v. Amer. Ins. Co.*, 835 S.W.2d 454 (Mo.App. S.D.1992); *Steinberg v. Fleischer*, 706 S.W.2d 901 (Mo.App. E.D.1986); and

*McDowell v. Schuette,* 610 S.W.2d 29 (Mo. App. E.D.1980).

The following are the relevant allegations of Count I of the petition:

2. Plaintiff entered into a contract with Defendants John Q. Hammons and John Q. Hammons Entertainment, Inc., beginning on or about December 17, 1992, through approximately December 12, 1994.

. . .

5. That Defendant John Q. Hammons agreed to the following:

a. Arch Smith be paid $150,000 per year;

b. Living Quarters to be provided to Arch Smith;

c. Office Space plus expenses for offices to be provided to Arch Smith;

d. Arch Smith be provided an administrative assistant who would also be an employee of Defendant Hammons;

e. Arch Smith to have reasonable creative control over the illusions show;

f. Arch Smith be reimbursed for any expenses incurred while working on project for Defendant John Q. Hammons;

g. Arch Smith to have first option to buy any equipment or real estate associated with the show, such option to be left open ninety (90) days;

h. Arch Smith to negotiate at a later date, percentage on profit from show in the theater; and

i. Arch Smith to negotiate with Defendant Hammons a signing bonus at a later date.

6. Plaintiff Arch Smith promised to do the following:

a. Design, stage, direct, perform and star in magic and music show at a theater owned by Defendant John Q. Hammons;

b. Keep all plans for the show secret;

c. Refrain from publicly performing until the opening of the show;

d. Make all preparation to put the magic and music show together.

7. Plaintiff performed all of the acts called for in such offer and did so to accept the offer by Hammons.

. . .

12. That on or about July 27, 1994, Defendant John Q. Hammons agreed to pay Plaintiff, operating under the show name of Arch Von Weston, five percent (5%) of all net profits in excess of one Million Dollars and less than $2.5 million; ten percent (10%) of the net profits in excess of $2.5 million; twelve and one-half percent (12½) of the net profits in excess of $4 million and less than $5.5 million; and fifteen percent (15%) of all net profits in excess of $5.5 million.

13. Plaintiff and Defendant agreed in the event any legal proceedings were instituted as a result of a breach of the contract, the prevailing party in such proceeding shall be entitled to recover reasonable attorneys fees, paralegal fees, law clerk fees, and other legal expenses and costs from the non-prevailing party.

. . .

15. That Defendants John Q. Hammons and John Q. Hammons Entertainment Company, Inc. have breached their agreement in the following manner:

a. Despite due demand, Defendants have failed to pay Plaintiff $150,000 per year since January 1993;

b. Defendants have failed to provide housing as promised to Plaintiff;

. . .

e. Defendants relieved Arch Smith of his duties and involvement in the project on or about December 12, 1994.

16. That as a result of the said breaches, Plaintiff has been damaged in the amount of $1,144,250.00, "plus any profits that Plaintiff should have shared with Defendants."

Wherefore, Plaintiff prays judgment in Count I of his cause of action against Defendants for $1,144,250.00, for his reasonable attorneys fees, prejudgment interest, costs and such further and additional relief as the Court may deem just and appropriate.

In Count II the Plaintiff incorporated the allegations of Count I and alleged that during December 17, 1992, through December 12, 1994, Plaintiff provided valuable services to Defendants, which were beneficial to Defendants. He prayed for judgment for a fair and reasonable amount, prejudgment interest, costs and other relief.

Defendants filed a "Motion and Suggestions for Summary Judgment" upon Count I. The Plaintiff filed his "Response to the Motion and Suggestions in Opposition." The trial court granted a summary judgment upon Count I in favor of the Defendants.

Thereafter a jury trial was had upon Count II. The jury returned a unanimous verdict for the Defendants. Final judgment upon the petition was then entered against Plaintiff. The Plaintiff's motion for a new trial and to reconsider the summary judgment was overruled. The case was submitted on the briefs.

By his brief to this court, the Plaintiff has limited the issues on appeal by stating only one point. "We are constrained by the rules to confine our efforts solely to the points briefed, the rules in this regard being applicable with equal force to court-tried cases as well as jury-tried matters." *Kurtz v. Fischer*, 600 S.W.2d 642, 645 (Mo.App. W.D.1980) (cit-ing Rule 84.04(d); *Haase v. Richmond*, 570 S.W.2d 341, 344 (Mo.App.1978)). Thus limited, the only question for review on this appeal is the issue presented in Plaintiff's brief. *Id.;* see also *In re Marriage of Ulmanis*, 23 S.W.3d 814, 817 (Mo.App. S.D.2000). Plaintiff's sole point on appeal is: "The trial court erred in granting partial summary judgment when the court determined that the contract was not divisible in that the non-agreed to terms were not essential to the contract."

Plaintiff first supports his point by lengthy recitations of the services he rendered in preparing a magic show. He also recites various actions and statements of Hammons that Plaintiff contends established a contract. Such recitations bear a source reference such as (T.R. 512). This is obviously a reference to the transcript of the testimony at the trial of Count II. He pointedly omits reference to the repeated testimony of Hammons that any obligation he might assume was upon the condition that Plaintiff perform by producing a magic show in which he was the star. The following is an example: "Never any doubt in Smith's mind or mine, he had to perform to be compensated. That was understood."

However, such recitations are not material to the determination of Plaintiff's point that the trial court erred in sustaining Defendants' motion for summary judgment upon Count I. The procedure to be followed and pleadings and evidence to be considered by a trial court in ruling upon such a motion are set forth in Rule 74.04, Missouri Rules of Civil Procedure (2001), and well-defined by decision.

This court holds the plain meaning of Rule 74.04(c)(3) ... is that a trial court, in deciding whether to grant a motion for summary judgment, should consider only the motion and the response—the

only pleadings authorized by Rule 74.04(c)(1) and (2)—together with the affidavits, admissions, deposition testimony and documents referred to in those pleadings.

*New Prime, Inc. v. Prof'l Logistics Mgmt. Co., Inc.,* 28 S.W.3d 898, 904 (Mo.App. S.D.2000). The transcript of the trial upon Count II was not before the trial court in considering the motion for summary judgment, nor is it before this court in considering the propriety of the summary judgment granted.

The trial court grants or denies motions for summary judgment on the basis of what is contained in the motions for summary judgment and the responses thereto. As an appellate court, we are confined to considering the same information that the trial court considered in rendering its decision on the motion for summary judgment.

*Mothershead v. Greenbriar Country Club, Inc.,* 994 S.W.2d 80, 85 (Mo.App. E.D.1999) (citations omitted).

■ The standard for determining whether or not a defendant's Motion for Summary Judgment should be granted is also well-established.

[A] "defending party" may establish a right to judgment by showing facts that negate any one of the elements facts of claimant's claim. If the movant meets this burden, the non-movant may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Rule 74.04, shall set forth specific facts showing that there is a genuine issue for trial.

*Koman v. Kroenke,* 913 S.W.2d 108, 109 (Mo.App. E.D.1995) (citing *ITT Comm. Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. *banc* 1993); Rule 74.04(e)).

■ By their Motion and Suggestions, the Defendants assert they were entitled to summary judgment because the parties never reached an agreement upon the terms of the contract alleged by the Plaintiff and upon the basis of which he sought to recover. In separate numbered paragraphs, the Defendants allege that no agreement was reached concerning:

3. the type, location or even the general price range of the living quarters allegedly to be provided plaintiff;

4. the details of the 'first option to buy';

5. the percentage of profit from the theater show to be shared with the plaintiff; and

6. the measure or amount of money the plaintiff would receive as a 'signing bonus.'

Each allegation bore specific references to pages in Plaintiff's testimony in his deposition which established the allegation.

The Plaintiff filed a response to those allegations. In response to allegation 3, Plaintiff cited his testimony "(t)he living quarters, he agreed upon that." In response to allegation 4, Plaintiff cited the following from his testimony:

"Q. And then the first option to buy equipment and real estate, you said that was a matter yet to be discussed and subject to negotiation is that right?

A. *Correct.* Because he told me that he didn't—he said I don't think there's any problem with it, but he said I'm not sure how theater's going to fall, if it's going to be owned by the hotel or if I'm going to own it personally, but he said we'll get to that, that's not a problem, that part."

(Emphasis added.) Also in response to allegation 4, the Plaintiff cited the following from his testimony:

Q. What did you agree upon?

A. I don't think this is what we agreed upon this one, because I think it started—no. That would have been probably right. If the show did 2.5 Million, 10 percent of the net. Because that's what I told you before, the gross was what he questioned about. My concern was that, you know, when you're dealing with net, Mr. Hammons could say the expenses are whatever he claims that they are. And that would be hard. So I would say that might have been pretty close to what we agreed upon.

In directly responding to allegation 5, which concerns the percentage of profit, the Plaintiff did not refer to that vague testimony quoted above but stated: "Plaintiff admits the allegations contained in paragraph 5 of defendant's statement of material facts."

■ Plaintiff did not respond to allegation 6. "Where the response does not admit or deny each factual statement in the motion or contain any citations to the record to rebut the factual assertions in the motion, as required by Rule 74.04(c), we take the factual assertions contained in the motion as true." *Peck v. Alliance Gen. Ins. Co.*, 998 S.W.2d 71, 75 (Mo.App. E.D. 1999) (citing *Schlueter v. City of Maryland Heights*, 946 S.W.2d 273, 274 n. 2 (Mo.App. E.D.1997)).

Upon a comparison of the Defendants' statement of terms not agreed upon and specific references to Plaintiff's deposition and Plaintiff's response or lack of response thereto, it is apparent the evidentiary material established that the parties did not reach agreement upon four of the terms of the contract alleged in the petition. The Plaintiff does not contend otherwise. He argues this court should reverse the summary judgment because "[t]he trial court should have divided the contract between the *agreed upon* and the *non-agreed upon* terms since the non-agreed upon terms were not essential to the contract." (Emphasis added.)

■ It is hornbook law that the existence of an enforceable contract is dependent upon agreement of the parties, or meeting of the minds, upon the terms of that contract.

To establish a submissible case of breach of contract, a plaintiff must first establish the existence of an agreement. In order for a contract to be formed, the parties must mutually assent to its terms. The nature and extent of the contract's essential terms must be certain or capable of being certain. If the parties have reserved the essential terms of the contract for future determination, there can be no valid agreement.

Negotiations or preliminary steps towards a contract do not constitute a contract. The existence of a contract necessitates a 'meeting of the minds' which the court determines by looking to the intention of the parties as expressed or manifested in their words or acts. Whether a contract is made and, if so, what the terms of that contract are, depend upon what is actually said and done and not upon the understanding or supposition of one of the parties.

*Gateway Exteriors, Inc. v. Suntide Homes, Inc.*, 882 S.W.2d 275, 279 (Mo.App. E.D.1994) (citations omitted).

Plaintiff argues that the terms not agreed upon are not material and, therefore, there is an enforceable contract for the Defendants to pay him. He does not explain why the non-agreed upon terms are not material. The fallacy of such a contention is demonstrated by his testimony in the evidentiary material cited to the trial court that in the calculation of the damages Plaintiff sought to recover, $500,000 is for his share of the profits. It does not require citation of cases to estab-

lish that the percentage of profits to be shared was material to the contract upon the basis of which the Plaintiff alleges he is entitled to recover those damages.

To support his position the Plaintiff cites *Dippel v. Rokwell, Indus., Inc.*, 715 S.W.2d 553 (Mo.App. E.D.1986). *Dippel*, 715 S.W.2d at 556, and other cases such as *HGS Homes, Inc. v. Kelly Residential Group, Inc.*, 948 S.W.2d 251, 256 (Mo.App. E.D.1997) discuss five criteria which aid in determining whether or not the parties intended that one agreement reached during negotiations be a separate contract. However, *Dippel* does not aid the Plaintiff, but demonstrates that the Plaintiff's contention on appeal has no merit. In *Dippel*, the plaintiff brought an action to recover upon the agreement he pleaded to be a divisible or separate contract. 715 S.W.2d at 555–56. Plaintiff did not follow this course. He sought to recover upon a contract which he alleged included the non-agreed upon terms. "He must recover on the contract as alleged, and must show a performance thereof." *Cook v. Harrington*, 54 S.W.2d 436, 439 (Mo.App.1932) (citations omitted); see also *Heard v. Stahl*, 271 S.W.2d 68, 70 (Mo.App.1954). A party cannot plead one contract and expect the court to enforce another. "[T]he court should not be charged with assuming that the pleader intended to conceal one cause of action within another." *King v. Guy*, 297 S.W.2d 617, 624 (Mo.App.1956) (citation omitted).

In sustaining Defendants' motion for summary judgment, the trial court found:

1. There is no genuine issue of material fact with respect to the claims set forth in Count I of plaintiff's Petition herein in that the parties did not agree upon the essential terms of the contract, including such matters as plaintiff's share of any profits from the proposed show, the amount or nature of any signing bonus

to be paid to plaintiff in connection with his services, the nature and extent of any housing to be provided for plaintiff or the terms of any right of first refusal in favor of plaintiff relating to the proposed magic show and, therefore, there is no enforceable contract upon which plaintiff can recover.

The trial court did not err in so finding and entering summary judgment upon Count I in favor of Defendants. The final judgment against Plaintiff is affirmed.

SMITH, P.J., and FLANIGAN, Sr.J, concur.