# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### AUGUST 24, 2011 Session

## DAVID DAWSON JOHNSON v. MADISON COUNTY, TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C-10-136      Roger A. Page, Judge**

**No. W2011-00343-COA-R3-CV - Filed September 29, 2011**

Madison County allegedly erroneously mis-assigned and sold a portion of Appellant's property. Many years later, in 2006, Appellant learned of the alleged mistake and filed suit to quiet title against Madison County, two former owners, and the then-current property owner. In 2010, the matter was settled prior to trial, and the property was returned to Appellant. Appellant then filed suit against Madison County seeking to recover his litigation expenses incurred in the action to quiet title. The trial court, however, dismissed his claims as time-barred. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Teresa A. Luna, Charles H. Barnett, Jackson, Tennessee, for the appellant, David Dawson Johnson

James I. Pentecost, Donald D. Glenn, Melissa K. Van Pelt, Jackson, Tennessee, for the appellee, Madison County, Tennessee

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

According to Appellant David Dawson Johnson's complaint, tax map and parcel numbers were first used in Madison County, Tennessee, in 1972. That year, the Madison County Tax Assessor assigned the Johnson family farm to Map 120, Parcel 5. The assessor also allegedly erroneously assigned fifty-two acres of that farm to an adjacent Parcel 7, under the name J. H. Reed. The Johnson family paid property taxes on its farm, including the fifty-two acres assigned to Parcel 5; however, the taxes for the same fifty-two acres assigned to Parcel 7 were not paid.

In 1982, the Tax Assessor's office issued a summons for delinquent property taxes against J. H. Reed, as the listed owner of Parcel 7. When J. H. Reed could not be found "after diligent search and inquiry[,]" the Madison County Chancery Court permitted notice to be published in the Jackson Sun newspaper of the pending tax sale of the property. The notice listed the property owner as "Reed J. H.[,]" gave his address as "Assessor's Office Jackson, Tenn. 38301[,]" and it described the property as "N. of Mt. Pinson Rd. 52 Acres 120-7[.]"

The delinquent taxes were not paid, and the property was sold in a tax sale. On March 14, 1983, a "Decree Confirming Sale" was entered, confirming the sale of "N. of Mt. Pinson Rd. 52 Acres" to James Buchanan. Mr. Buchanan's Estate subsequently sold the property to Charles Buchanan, who sold it to N.R.L.L. East, LLC, which sold it to Hugo Joseph.

Appellant's family apparently did not learn of the tax sale, however, and continued to occupy the farm and pay the property taxes on it, including the fifty-two acres at issue, until "early 2006[.]"[1] Appellant states that "[t]here was never any indication that anything was wrong until early 2006 when the mapper for the Tax Assessor's office told [Appellant] that the Tax Assessor had made a mistake and the 52 acre farm had been sold at a tax sale

---

[1]Appellant claims that his father, Ulys D. Johnson, acquired three tracts of land, consisting of approximately 380 total acres and including the fifty-two acres at issue in this case, in 1941, 1949 and 1957. In 2002, Appellant's father quitclaimed the property to Appellant and Ulys L. Johnson. In 2003, Appellant and Ulys L. Johnson quitlcaimed the property to other family members. Then, in 2006, those family members quitclaimed a portion of the property, apparently including the fifty-two acres, back to Appellant.

Appellant states that "[a]fter the above 'intra-family' transfers, [Appellant] became the sole lawful owner of the David Johnson Real Property , Tract I and Tract II. His family has continually and exclusively used, controlled and farmed this property since it was acquired by [Appellant's] father. A portion of the property was used for raising crops and another portion was used for cattle and pasture land."

back in 1983."

Appellant claims that he "attempted on several occasions to work this matter out" but that Madison County "would do nothing about [the mistake] and instructed [him] to get an attorney and sue." Thus, on April 10, 2006, Appellant filed a Complaint to Quiet Title in the Madison County Chancery Court against N.R.L.L. East, LLC. Eventually, former owner Charles Buchanan, then-current owner Hugo Joseph, and Madison County were joined as parties.

In April 2010, the litigation was settled prior to trial. Various funds were reimbursed to the parties, and in exchange for Appellant's dismissal of the lawsuit, Mr. Joseph quitclaimed the property to Appellant. The Release and Settlement Agreement (the "Settlement") was executed as follows: by N.R.L.L. East, LLC on March 29, 2010; by Mr. Joseph on March 30, 2010; by Appellant on April 6, 2010; by Mr. Buchanan on April 7, 2010; and by Madison County on April 8, 2010. In the Settlement, Appellant "reserve[d] the issue of [his] alleged claim for attorney fees, costs and expenses against the County under the 'independent tort theory,' or other similar theories, relating to such attorney fees, costs, and expenses that [he] incurred while prosecuting the . . . matters." However, the Settlement provided that "nothing in this agreement shall be deemed as an admission as to County's liability under said claims and County, instead, repeats and re-asserts its defenses listed herein above and that said claims for attorney fees, costs, and expenses are barred by [the] applicable statute of limitations."

On May 5, 2010, Appellant filed a complaint against Madison County for fees, costs and expenses incurred in the previous litigation pursuant to the theories of "independent tort/tort of another" and "libel of title." Madison County filed an answer and counterclaim, alleging breach of contract, intentional and/or negligent misrepresentation, and/or promissory fraud against Appellant. Madison County also filed a motion to dismiss on August 16, 2010, asserting that Appellant's claims were barred pursuant to the doctrines of res judicata and accord and satisfaction/release. Additionally, it argued that the applicable statute of limitations had run, that Appellant had failed to properly state a claim for libel of title, and that Madison County was immune from suit under both the Governmental Tort Liability Act and the public duty doctrine.

Following a hearing, the trial court granted Madison County's motion to dismiss. Specifically, it "found to be well taken [] the claims or arguments of [Madison County] regarding the statute of limitations and/or repose and the immunities granted by the Public Duty Doctrine." The trial court's order was made final pursuant to Tennessee Rule of Civil Procedure 54.02, and Appellant timely appealed.

## II. Issues Presented

Appellant presents the following issues, as summarized, for our review:

1. Whether Appellant's claims are barred by the applicable statute of limitations; and

2. Whether Madison County has immunity from suit pursuant to the Public Duty Doctrine.

Additionally, Madison County presents the following issue:

1. Whether Appellant's libel of title claim should be dismissed because his complaint failed to appropriately state a claim for such or because the claim is barred by res judicata, accord and satisfaction and/or release.

For the following reasons, we affirm the circuit court's dismissal of Appellant's independent tort and libel of title claims as time-barred.

## III. Standard of Review

The determination of whether the trial court erred in ruling on a motion to dismiss for failure to state a claim upon which relief could be granted is a question of law. *Doe v. Catholic Bishop for Diocese of Memphis,* 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008) (citing *Farris v. Todd,* No. E1999-01574-COA-R3-CV, 2000 WL 528408, at *2 (Tenn. Ct. App. May 3, 2000)). Thus, this Court must review the trial court's ruling on a Rule 12.02(6) motion to dismiss de novo with no presumption of correctness. *Id.* (citing *Stein v. Davidson Hotel Co.,* 945 S.W.2d 714, 716 (Tenn.1997)). "'[W]e must construe the [plaintiff's] complaint liberally in favor of the plaintiff, taking all of the allegations of fact therein as true[,]'" *Id.* (quoting *Randolph v. Dominion Bank of Middle Tenn.,* 826 S.W.2d 477, 478 (Tenn. Ct. App. 1991)), as "[a] motion to dismiss for failure to state a claim for which relief can be granted 'tests only the legal sufficiency of the complaint[.]'" *Id.* (quoting *Stein,* 945 S.W.2d at 716).

## IV. DISCUSSION

### *A. Statute of Limitations*

This case involves a tort action brought against a governmental entity, and therefore, it is governed by the Governmental Tort Liability Act ("GTLA"). ***See* Tenn. Code Ann. § 29-20-101 et seq.** A governmental entity is generally immune "from suits arising out of the exercise and discharge of a State entity's functions," ***Whitmore v. Shelby County Gov't***, No. W2010-01890-COA-R3-CV, 2011 WL 3558285, at *3 (Tenn. Ct. App. Aug. 15, 2011), and the GTLA, which reaffirms the doctrine of sovereign immunity, waives this immunity only "'in limited and enumerated instances for certain injuries[.]'" ***See Lynn v. City of Jackson***, 63 S.W.3d 322, 337 (Tenn. 2001) (citing Tenn. Code Ann. § 29-20-201(a); *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997)).

When immunity is waived and suit permissible,[2] a claim for damages "must be brought in 'strict compliance'" with the GTLA's terms. ***Id.*** (citing Tenn. Code Ann. § 29-20-201(c) (Supp. 2010); *Doyle v. Frost*, 49 S.W.3d 853, 858 (Tenn. 2001)). "'One of the terms of the GTLA which demands strict compliance is the statute of limitations.'" ***Id.*** (quoting *Lynn*. 63 S.W.3d at 337). Pursuant to the GTLA, a cause of action against a governmental entity "must be commenced within twelve (12) months *after the cause of action arises*." **Tenn. Code Ann. § 29-20-305(b)** (emphasis added). "Tennessee law views the twelve-month limitation period for bringing an action under the GTLA as a condition precedent which must be met. If suit is not filed within the statutory period, both the right and the remedy is extinguished." ***Lynn***, 63 S.W.3d at 337.

The parties to this appeal do not dispute the applicability of the GTLA's twelve-month statute of limitations. Instead, they disagree as to when Appellant's "cause of action ar[ose]" against Madison County, for fees, costs and expenses incurred in the action to quiet title. Appellant claims that "[t]he moment Hugo Joseph quitclaimed his interest in [Appellant's] 52 acre farm back to [Appellant] as part of the Settlement Agreement that ended the earlier action, [Appellant's] cause of action arose for the fees and litigation expenses incurred in that earlier action." Thus, Appellant contends that the cause of action arose on March 30, 2010–the date Mr. Joseph signed the Settlement–and therefore, that his complaint for litigation expenses was timely filed on May 5, 2010. Madison County, however, suggests three earlier dates as the date on which Appellant's cause of action arose: 1) 1972, when the erroneous assignment was made; 2) 1982, when notice of the delinquent taxes was published; or 3) 2006, when Appellant learned of the Tax Assessor's alleged mistake. Utilizing any of

---

[2]We make no determination as to whether Madison County's immunity is waived.

these dates, it argues, Appellant's 2010 complaint is beyond the GTLA's statute of limitations.

"[A] cause of action 'arises' under the GTLA when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she sustained an injury as a result of the defendant's wrongful conduct." ***Sutton v. Barnes***, 78 S.W.3d 908, 916 (Tenn. Ct. App. 2002) (citing *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998)). "'[T]he plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct.'" ***Shadrick***, 963 S.W.2d at 733 (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994)). The "discovery rule" does not permit a plaintiff to "delay filing suit until all the injurious effects and consequences of the alleged wrong are actually known to the plaintiff[,]" ***Id.*** (citing *Wyatt v. A-Best Co.*, 910 S.W.2d 851, 855 (Tenn. 1995)), nor does it toll the statute of limitations "until the plaintiff actually knows the 'specific type of legal claim he or she has[.]'" ***Id.*** (quoting *Stanbury v. Bacardi*, 953 S.W.2d 671, 672 (Tenn. 1997)). "Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitation[], which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims." ***John Kohl & Co. P.C. v. Dearborn & Ewing***, 977 S.W.2d 528, 533 (Tenn. 1998) (citing *Wyatt*, 910 S.W.2d at 855).

Madison County contends that both Appellant's independent tort and libel of title claims are barred by the statute of limitations. It points out that, by his own admission, Appellant became aware of the Tax Assessor's alleged mistake in 2006, and he even instituted his action to quiet title later that same year.[3] Again, Appellant claims that his cause of action against Madison County did not arise until March 30, 2010, when Mr. Joseph signed the Settlement.

We begin our analysis by examining the "independent tort" and "libel of title" theories of recovery. Libel of title occurs "'when a person . . . , without privilege to do so, willfully records or publishes matter which is untrue and disparaging to another's property rights in land as would lead a reasonable person to foresee that the conduct of a third party purchaser might be determined by the publication, or maliciously records a document which clouds another's title to real estate.'" ***Phillips v. Wood***, No. E2007-00697-COA-R3-CV, 2008 WL 836161, at *7 (Tenn. Ct. App. Mar. 3, 2008) (quoting 53 C.J.S. *Libel and Slander* § 310 (2005) (footnote omitted)). Thus, to establish a claim for libel of title, a plaintiff must show:

---

[3]We note that Appellant's 2006 Complaint to Quiet Title was filed with the assistance of counsel.

"'(1) that it has an interest in the property; (2) that the defendant published false statements about the title to the property; (3) that the defendant was acting maliciously,[4] and (4) that the false statements proximately caused the plaintiff a pecuniary loss.'" ***Id.*** (quoting *Brooks v. Lambert*, 15 S.W.3d 482, 484 (Tenn. Ct. App. 1999)). In Tennessee, attorney fees are typically not recoverable in the absence of a statute or a contract specifically providing for such recovery. ***Pullman Standard, Inc. v. Abex Corp.***, 693 S.W.2d 336, 338 (Tenn. 1985). However, libel of title claims represent an exception to this general rule, and the legal expenses incurred to restore a clouded title may be recovered. ***Ezell v. Graves***, 807 S.W.2d 700, 703 (Tenn. Ct. App. 1990); *see also Harmon v. Shell*, Nos. 1409, 01-A-01-9211CH00451, at *5 (Tenn. Ct. App. Apr. 27, 1994).

Likewise, attorney fees and costs may be recovered under an independent tort theory. ***Pullman***, 693 S.W.2d at 340. As our Supreme Court has stated, "It appears to be well settled that where the natural and proximate consequences of a tortious act of defendant has been to involve plaintiff in litigation with a third person, reasonable compensation for attorneys' fees incurred by plaintiff in such action may be recovered as damages against the author of the tortious act." ***Id.*** (quoting 42 A.L.R.2d 1183 (1956)).

In his brief, Appellant argues that his complaint to recover legal expenses sufficiently alleged each element of a libel of title claim, but he fails to address why this claim is not time-barred. However, with regard to his independent tort claim, he argues that the cause of action did not accrue until the litigation to quiet title was "successfully concluded." In support of this argument, Appellant cites language from the Supreme Court's *Pullman* decision, in which the Court stated:

"One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered in or incurred *in the earlier action*."

***Id.*** at 340 (quoting Restatement (Second) of Torts, § 914(2) (1979)). This "earlier action" language, he maintains, implies that "the 'earlier action' must necessarily conclude before

---

[4]"Statements made with a reckless disregard of the rights of the property owner or with reckless disregard as to whether the statements are false may be found to be malicious within the scope of an action for libel of title." ***Phillips***, 2008 WL 836161, at *7 (citing *Brooks*, 15 S.W.3d at 484). In his complaint, Appellant alleged that the Tax Assessor's Office was "recklessly negligent" in doubly-assigning the 52 acres and in failing to provide adequate notice prior to the tax sale.

a cause of action can arise." Furthermore, he insists that "[i]t is also rightly implied that if the plaintiff were not successful in the earlier litigation with the third party, there would be no cause of action for a *Pullman* claim."

Simply put, Appellant's assertion contradicts the well-established tenets of the discovery rule which is applicable in this case–namely, that a right of action arises when an injury is reasonably discoverable, and that a plaintiff may not forestall action until all effects of such injury are made known. *See Shadrick*, 963 S.W.2d at 733; *Sutton*, 78 S.W.3d at 916. Appellant admits that in "early 2006 . . . the mapper for the Tax Assessor's office told [him] that the Tax Assessor had made a mistake and the 52 acre farm had been sold at a tax sale back in 1983." Based upon that information, Appellant hired an attorney and filed suit to quiet title to the property in April 2006. To avoid a statute of limitations lapse, Appellant could have raised his independent tort and libel of title claims in the action to quiet title. *See Whitelaw v. Brooks*, 138 S.W.3d 890, 892, 894 (Tenn. Ct. App. 2003). Although Appellant did not yet know that his suit would end "successfully" in a settlement, he did know that Madison County had allegedly injured him and that he would incur litigation expenses as a result. Strictly construing the GTLA and its twelve-month statute of limitations, we find that Appellant's claim for litigation expenses, brought under the theories of both independent tort and libel of title, are time-barred. Thus, we affirm the trial court's dismissal of these claims.

## V. CONCLUSION

For the aforementioned reasons, we affirm the circuit court's dismissal of Appellant's independent tort and libel of title claims as time-barred. All remaining issues are pretermitted. Costs of this appeal are taxed to Appellant, David Dawson Johnson, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.